KATHERINE GLENNEN *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    November 18, 1910. — January 6, 1911.

Present : KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence*, Street railway.    *Evidence*, Relevancy and materiality.    *Way*, Public.

Statement by RUGG, J., of the principles of law governing the liability of street railway companies for personal injuries received by their passengers and due, not to the instrumentalities or employees of the companies, but to acts and conduct of other passengers or strangers.

At the trial of an action against a street railway company to recover for injuries, received while the plaintiff was a passenger upon an open electric car of the defendant and caused by the conduct of a crowd which rushed upon the car and turned over seats, evidence tending to show that similar crowds acting in the same way customarily entered the defendant's cars at the same place and time of day and week and season of the year is relevant and material, since it tends to show that the defendant knew and had had an opportunity to guard against the condition which was the cause of the plaintiff's injury.

At the trial of an action by a woman against a street railway company to recover for injuries received while the plaintiff was a passenger upon an open electric car of the defendant on a Sunday afternoon in the summer, there was evidence tending to show that when the car reached a certain point which was near to a place of public resort by a river, it stopped for the purpose of having the trolley reversed and the backs of seats turned over preparatory to returning over its course, that the plaintiff, a woman, rose with a child in her arms to leave the car but was prevented from doing so by an on-rushing crowd who began turning over the backs of seats in the car and finally turned over the back of a seat against which the plaintiff was leaning and pinned her arm between the back and the seat; that while the crowd so was acting the motorman was on the front platform and the conductor on the rear platform and a person in the employ of the defendant called a " starter" was standing ten feet away. The place where the car stopped was a public street. Evidence was offered by the plaintiff tending to show that such crowds were customary at that place, time of day, week and season. Such evidence was excluded and a verdict was ordered for the defendant. *Held*, that the evidence should have been admitted and that the verdict for the defendant should not have been ordered, because there was evidence tending to show that the defendant, knowing of the danger to the plaintiff, had failed to exercise the care it should have exercised to guard her from injury ; and that the fact that the conduct of the crowd was in a public street was of no consequence, since the question was not one of policing the public way, but of shielding a passenger.

VOL. 207.                    32

TORT by a woman for personal injuries received as stated in the opinion while the plaintiff was a passenger of the defendant on a car at Spring Street in that part of Boston formerly West Roxbury on May 19, 1907. Writ dated November 4, 1907.

The case was tried in the Superior Court before *Harris*, J. The facts are stated in the opinion. At the close of the plaintiff's evidence, a verdict was ordered for the defendant; and the plaintiff alleged exceptions.

The case was submitted on briefs.

*F. Juggins & A. W. Shepard*, for the plaintiff.

*L. R. Chamberlin & R. A. Stewart*, for the defendant.

RUGG, J. A common carrier of passengers is required to exercise the utmost care consistent with the nature and extent of its business to carry its passengers to their destination in security and enable them to alight there with safety. This extraordinary vigilance is owed, not only as to its own instrumentalities and employees but also as to other passengers or strangers, so far as any harmful misconduct on their part may be foreseen and guarded against. The highest degree of prudence and circumspection is exacted of the carrier in anticipating and suppressing violence to passengers from all outside sources. The precautions which the carrier must take in the performance of this duty depend upon the facts of each case. No positive regulation or absolute usage has been or can be defined as a final standard for the discharge of its obligation. The natural turbulence of a multitude of people to be expected at a public celebration may require provision against unusual occurrences. The kind of assembly and the character of people likely to attend it, the place from which they have come and to which they are going, the hour of the day and the normally accompanying impatience or restraint, the probable temper and disposition of a crowd in view of the causes which bring it together are all circumstances to be regarded in determining whether in any instance the carrier has performed the highly onerous and stringent obligation imposed on it. *Kuhlen* v. *Boston & Northern Street Railway*, 193 Mass. 341, and cases cited. *Beverley* v. *Boston Elevated Railway*, 194 Mass. 450.

On the other hand, a common carrier does not insure to its passengers immunity from harm. It is engaged in a public ser-

vice which must be managed in such a manner as to be practical and adapted to the needs of contemporary society, both as to expense, convenience, comfort and rapidity. Hence it cannot be held responsible for manifestations of lawlessness, heedlessness, impetuosity or force which a high degree of prevision and sagacity could not reasonably be expected to forestall. Injury arising from the sporadic act of an individual or the aggregated impulses of a throng, if outside the limits of conduct reasonably to be apprehended by one under a strong legal duty to be most keenly sensitive to guard against preventable wrongs, affords no ground of liability. The carrier is not bound to adopt all possible precautions nor every conceivable safeguard for the safety of passengers, nor to exercise the utmost diligence which human ingenuity can imagine to avert injury. *Simmons* v. *New Bedford, Vineyard & Nantucket Steamboat Co.* 97 Mass. 361. *Joy* v. *Winnisimmet Co.* 114 Mass. 63. *O'Neil* v. *Lynn & Boston Railroad,* 180 Mass. 576. *Pitcher* v. *Old Colony Street Railway,* 196 Mass. 69. *Lyons* v. *Boston Elevated Railway,* 204 Mass. 227. *McCumber* v. *Boston Elevated Railway, post,* 563. These principles are well settled and have been steadily adhered to. It is not necessary to cite or review the many other cases by which they are illustrated, but only to apply them to the facts before us.

The plaintiff was a passenger upon one of the defendant's open cars, and reached the terminus of the route near a portion of the Charles River reservation, between five and six o'clock on a Sunday afternoon in May. She was accompanied by her son two and one-half years old. It was customary at this terminus, which was on a public street, for the trolley to be reversed, the seats turned over, and for the car to start to return on the same track. At the time of the events to be narrated the conductor was on the rear platform. The motorman was at his post on the front platform, and there was a starter in the employ of the defendants eight or ten feet away from the car. A great many people were in the habit of going to this reservation, and a boathouse was nearby, where canoes were kept. When the car came to a stop at its terminus the plaintiff's description of what happened was as follows: "I started to get out of the car . . . there was a crowd of people there — there

seemed to be about a hundred people or more. There was a great crowd rushed on to the car and started turning over seats. . . . There was a great confusion. I started to get out of the car and I was pushed back . . . into my seat again. . . . I grasped hold of the stanchion, but I was forced back in again into my seat. . . . [The child] was in my arms ; I was going to step down off the car. . . . I had my arm on the back of the seat . . . waiting for a chance to get out of the car, when this seat in back was turned over and pinned my arm between the backs of the two seats. . . . Passengers [were] getting on to the railing and on the outside ; on the right hand and on the left as well. . . . Right around me it seemed that most of [the seats] were turned over." She further testified that no employee of the defendant said or did anything to restrain the crowd or assist her, and that the events she had described happened within a period of two or three minutes. The plaintiff offered to show that on preceding Sundays of 1907 and 1906, at about the same hour, there had been rushing and crowding and jostling by passengers in getting upon the cars at this place, but this line of inquiry was excluded subject to her exception.

Evidence as to what has been the custom of a crowd at a particular place or under special circumstances in boarding the defendant's cars was competent, because a railway company has reasonable cause to know what has been habitually done respecting its cars. It bore upon the care which the defendant ought to have exercised and the protection which it ought to have furnished to its passengers who were entitled to alight even in the face of a large number of people desiring to become passengers. *Nichols* v. *Lynn & Boston Railroad,* 168 Mass. 528. The evidence as to the conduct of crowds of the year before the accident at the same season of the year, when it may be fairly inferred that conditions as to the reservation, boathouse and use of canoes were substantially the same, had some tendency in the same direction. The plaintiff appears to have gone far enough to bring herself within the operation of this rule. The fact that the trial judge excluded the line of inquiry excused her from making of so complete an offer of proof as would otherwise have been necessary.

It is also to be observed that the plaintiff was a woman en-

cumbered with a small child and entitled to protection commensurate with the impaired capacity to care for herself resulting from this burden. *Hamilton* v. *Boston & Northern Street Railway*, 193 Mass. 324. Her own testimony as to the length of time elapsing after the car stopped and before her injury and the facts that she had once risen from her seat and been forced back into it by the violence of the crowd and, having risen again, was compelled to pause for opportunity to step, and that while thus waiting the seat was thrown against her, tend to show that the boisterousness was not an instantaneous act without forewarning, but was of appreciable duration and might be found to have afforded in connection with all the other attendant conditions a premonition such as to call for action on the part of the conductor or starter. That this occurred upon a public street rather than in a station under the exclusive control of the defendant is not decisive in its favor.

It is not a question of policing the public way, but of shielding its passenger while in the car.

Evidence of unruly conduct of crowds at this place on previous occasions when the circumstances were similar should have been received and the case submitted to the jury.

*Exceptions sustained.*