ELLA J. NUTE *vs.* BOSTON AND MAINE RAILROAD.
HENRY O. NUTE *vs.* SAME.

Suffolk. January 16, 1913. — February 27, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* Railroad, Protection from crowd, Due care of plaintiff. *Carrier,* Of passengers.

In an action by a woman against a railroad corporation for personal injuries sustained from being obliged to jump from a train of the defendant by riotous and violent conduct of other passengers, which, it was alleged, the defendant ought to have foreseen and guarded against, it appeared that in the city where the plaintiff took the train a labor strike had been going on for more than a week, that strikebreakers, so called, had been employed, that they had been carried to and from the city by the defendant's trains and had been escorted between the factory and the defendant's station by policemen, that the train the plaintiff took was one by which strikebreakers were returning from their day's work and that some strikers, who had been acting as pickets, also

boarded the train, that the policeman who seemed to be in charge of the police escort told the conductor that there were some strikers and strikebreakers boarding the train, and that if they all got off at the same city the conductor ought to notify the city authorities, that, shortly after the train started, a fight and riot occurred, and that the plaintiff to escape injury jumped from the train before it had come completely to a stop and was injured. There also was evidence from which it could have been found that the conductor of the train, by warning the brakemen and another conductor who was present to be in readiness to suppress such an outbreak or by applying for aid to the policeman who gave him the warning or by asking the station-master for additional assistance, might have taken measures to avert a disturbance or to protect peaceable passengers from its consequences, and that he did none of these things. *Held,* that there was evidence for the jury that before the departure of the train the defendant through its conductor had notice that there was such danger of violent outbreaks among some of its passengers as to give it warning that there was need of providing for the protection of its other passengers, and that the defendant by its agents reasonably could have taken measures to avert the threatened danger or to guard its peaceable passengers against injury.

Jumping from a steam railroad train before it has come to a full stop in order to avoid injury from fighting and rioting of passengers on the train is not negligent as matter of law.

Two ACTIONS OF TORT, the first by a married woman for personal injuries received by her when a passenger on a train of the defendant which left Lynn for Boston at 5.17 P. M. on September 26, 1905, by reason of her being driven from the train by a fight, in which knives and pistols were used, between other passengers in the same car with the plaintiff, and the second by the husband of the plaintiff in the first case for consequential damages suffered by reason of her injuries. Writs dated respectively April 20, 1910, and November 26, 1909.

In the Superior Court the cases were tried together before *McLaughlin,* J. It appeared that the plaintiff in the first case, hereinafter called the plaintiff, together with about seventy-five other passengers, had boarded the train at the Central Square station in Lynn. After the train started from the Lynn station, and before it was fairly under way, a passenger near the plaintiff threw red pepper in the eyes of some passengers, and immediately there were from three to five pistol shots discharged in the end of the car where the plaintiff was. The man or men who fired the shots jumped from the train and a general tumult occurred in that car lasting for about a minute, during which time the plaintiff ran into the smoking compartment of the car ahead and jumped off the train from the front platform as the train was slowing down.

There was evidence which would warrant the jury in finding that the plaintiff was in the exercise of due care. The evidence in regard to notice to the defendant of the probability of a disturbance on the train and in regard to the possibility of averting such a danger to passengers or protecting them from it is described in the opinion.

At the close of the evidence the defendant asked the judge to make the following rulings:

"1. Upon all the evidence in the case the plaintiff is not entitled to recover.

"2. Upon all the evidence and under the pleadings in the case the plaintiff is not entitled to recover.

"3. Upon all the evidence in the case the jury would not be warranted in finding that the defendant corporation was negligent in receiving the passengers which it did receive, as alleged in the declaration, at the Lynn station.

"4. Upon all the evidence the jury would not be warranted in finding that the defendant corporation did not provide suitable and proper safeguards for the protection and conveyance of its passengers from Lynn to Boston, as alleged in the declaration.

"5. There is no evidence in the case which would warrant the jury in finding that the defendant had notice or reasonable cause to believe or expect that there would be a disturbance or riot on the train when it received the passengers at Lynn at the time in question."

The third of the rulings above quoted was held by this court to have been made in substance by the judge. The judge refused to make any of the other rulings quoted, and submitted the case to the jury. The jury returned a verdict for the plaintiff in the first case in the sum of $5,250 and a verdict for the plaintiff in the second case in the sum of $1,500. The defendant alleged exceptions, including certain exceptions to the admission of evidence which are mentioned in the opinion.

*H. F. Hurlburt,* (*C. M. Davenport* with him,) for the defendant.
*W. H. Drury,* for the plaintiffs.

SHELDON, J. We agree with the defendant's counsel that under the instructions given by the judge to the jury at the trial no question of negligence after the defendant's train had started from the station at Lynn was left to the jury, and that the only ground

of liability that was so left was as to whether the defendant had sufficient and seasonable notice from all the circumstances, including what occurred at the station that very afternoon before the train started, of the danger of the impending disturbance to make it liable for the consequences thereof, and that therefore the only question now open upon the main part of the case is whether there was evidence for the jury of such sufficient and seasonable notice to the defendant, so as to fasten liability upon it for the acts complained of and for the injuries which resulted therefrom to the female plaintiff, hereinafter called the plaintiff.

There was evidence that a strike of some workmen had been going on for more than a week at a shoe factory in Lynn, and that strikebreakers, so called, had been employed in that factory. These strikebreakers had come from Chelsea to Lynn each morning in one of the defendant's trains, and had returned from Lynn to Chelsea usually by the train which the plaintiff took to Boston. They had been escorted by policemen between the defendant's station and the factory, the policemen not surrounding them, but going along with them, one ahead of them, the others upon the sidewalk by their side or behind them. But there had been no disturbance or breach of the peace of any kind, except that, as one officer testified, on their way to the trains this afternoon a crowd gathered around them and some one in the crowd shouted "Scab." The plaintiff testified that as she was getting into the car she was pushed or shoved, so that she stumbled, and that the conductor said, "Stop your pushing, stop your shoving," to some men who looked like foreigners and were dressed like workingmen. There was evidence also that some of the strikers, one or more of whom had been acting as "pickets," got on the same train as the plaintiff and the strikebreakers, and that the policeman who apparently was in charge of the police escort told the conductor of the train that there were some strikers and strikebreakers boarding the train, and that if they all got off at Chelsea together he (the conductor) ought to notify the authorities. But there were no outcries and no disturbance and no indication (other than the facts stated may import) of trouble at the station before the train started; and the evidence was that the strikers who were at the station and who boarded the train were peaceable men by reputation.

From the facts that the strike had been on, and that strike-breakers had been employed and had been carried to and from Lynn by the defendant's trains and had been escorted to and from its station by policemen, and from the length of time that these circumstances had lasted, the jury could infer that they were known to the defendant; and it could be found that the defendant's conductor was warned that both strikers and strikebreakers were on his train, and that, if they got off the train together at Chelsea, notice ought to be given to the authorities there.

The law which governs cases like this was carefully and accurately stated to the jury by the judge. After reading and adopting the language of the decision in *Glennen* v. *Boston Elevated Railway*, 207 Mass. 497, 498, 499, he said to the jury: "Now the theory which underlies the plaintiff's case is that the defendant corporation, if it did not actually anticipate, had reason to know that these occurrences or similar occurrences or like happenings might take place in that car, and that in the exercise of that diligence which it is required to exercise it should have adopted some means to prevent these happenings which have been related here. If the plaintiff has not satisfied you by a fair preponderance of the evidence either that the agents and servants of the corporation, — for the corporation acts through these agents and servants, through its trainmen and conductors, through its employees who have charge of the stations, — if the plaintiff has not satisfied you that they either knew or in the exercise of that degree of diligence ought to have known such an outbreak might occur, then the plaintiff's case falls to the ground and neither plaintiff can recover. The evidence as to what took place before the departure of that train was competent and introduced for the sole purpose of showing that the corporation's agents and servants, if they were as careful of the rights and comforts or safety of passengers as they ought to have been, either knew or ought to have known that such an occurrence as has been related here was likely to happen." That is, as the judge ruled, the defendant was not to be held liable to the plaintiff for the injurious consequences to her from the outbreak of violence among some of the passengers upon the train, unless it was proved that it ought to have foreseen the likelihood of such a happening and to have forestalled it or to have guarded other passengers against the risk of injury therefrom. Besides

the decision in *Glennen* v. *Boston Elevated Railway, ubi supra,* and our own cases there cited, this rule is supported by very many adjudications in other jurisdictions, which have been referred to by counsel for the defendant. And see *Morse* v. *Newton Street Railway,* 213 Mass. 595, decided since this case was argued.

We cannot say that the defendant did not have notice of the danger and even of the probability of such an outbreak as in fact occurred. It knew, as the jury could infer, that a strike was going on; that strikebreakers had been employed; that there was a bitterness of feeling between the strikers and their sympathizers on the one side and the strikebreakers on the other side. Under these circumstances, warning was given to the conductor of its train, to the person, that is, whom the defendant had put in control thereof, whose duty it was to see that the passengers were protected and who for that purpose was the authorized representative of the defendant corporation itself, that strikers also were boarding the same train which the strikebreakers as usual were taking. This notice to the conductor could be found to be notice to the defendant itself. What, in view of the onerous duty which rested on the defendant and which was to be discharged by the conductor, should it have done for the protection of the passengers whom it invited to take this train, and for whose lives and safety, so far as these depended upon the high degree of care which was required of it, it made itself responsible? It is plain that in the existing state of affairs, if the police authorities of Lynn had failed to take adequate measures for the preservation of the public peace, if for example they had not provided an escort of policemen to accompany the strikebreakers to and from the factory in which they were employed, those authorities would have incurred a serious responsibility for any tumult or affray that might have arisen in the streets of Lynn. It is plain too that if the defendant's train had proceeded in all safety to Chelsea, and if the conductor had there seen the strikers and the strikebreakers leave his train together, and had neglected to give notice to any policeman or other authorities of Chelsea as he had been requested to do, much moral blame would have been put upon him for this omission if any disturbance had then broken out in Chelsea between these strikers and strikebreakers. But plainly the only ground for such an imputation could be that in view of the well known

feeling which, according to common knowledge, exists between these two classes of men there is a danger that violence will result from the coming together of these discordant elements. And the same circumstances which ought to put the guardians of the peace upon the alert and create upon their part a reasonable belief of the necessity of taking some precautions cannot be without significance when brought home to the notice of others upon whom rests some duty of action. This court has described what may be apprehended, unless guarded against, when a strike is followed by efforts of employers to procure other workmen instead of those who by striking have abandoned their employment. Hammond, J., in *Plant* v. *Woods,* 176 Mass. 492, 496.

We are therefore compelled to the conclusion that there was evidence which warranted the jury in finding that before the departure of the train from Lynn the defendant, through its conductor, had notice that there was such danger of violent outbreaks among some of its passengers as to put it fairly on its guard and give it warning that there was need of providing for the protection of its other passengers. The fact that there had been previously no actual breach of the peace was in evidence, and the defendant had the benefit of it. But this was not conclusive in its favor.

But as the judge properly ruled, what has been stated was not enough to hold the defendant in this action. It must be shown further that the defendant by its agents reasonably could have taken measures to avert the threatened danger, or at least to protect the plaintiff and other passengers against injury therefrom. But upon this point too there was evidence for the jury. The conductor might have warned his subordinates, the brakemen on the train, and the other conductor who was present, and have had them in readiness to prevent or at once to quell such an outbreak as followed. Even an application for aid to the policeman who gave him his warning, as it appeared from the defendant's cross-examination of this policeman, might probably have been successful. He might have applied to the station-master for additional assistants. He might have segregated the strikers or the strikebreakers in seats by themselves, where they could neither have made an attack nor have been subjected to one. We cannot say that such precautions, or others which he might have taken, would not have answered their purpose. But he did none of these things.

So far as appeared he did not act at all upon the information which he had received. And his negligence in these respects and under these circumstances was or could be found to have been the negligence of the defendant itself.

It follows from what has been said that the case was for the jury, and that the defendant's first, second, fourth and fifth requests for instructions rightly were refused. The third request was given in substance, for the jury were allowed to find for the plaintiff only upon the ground that has been stated. And the instructions given to the jury were full and accurate.

It properly has not been contended that the plaintiff's act in jumping from the car before the train had come to a full stop was negligent as matter of law. *Ingalls* v. *Bills,* 9 Met. 1.

The defendant's exceptions to the admission of evidence cannot be sustained. The questions put on re-examination to the policeman Kane had been made admissible by the defendant's cross-examination of that witness. The cross-examination of the conductor Kennard as to the shutting of the train gates was at the worst immaterial; and the way in which the case was finally left to the jury made it certain that the defendant was not prejudiced by the admission of the evidence. The testimony of the policemen Donoghue and Murphy to what they had done in the way of escorting the strikebreakers from the defendant's morning trains to the factory was competent on the question of notice to the defendant. The jury could find that these were open and public acts which had become known to the defendant through its representatives at the Lynn station.

*Exceptions overruled.*