CESIDIO LEONE, administrator, *vs.* ANTONIO FALCO.

Middlesex.     February 7, 1935. — October 31, 1935.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Dog.*

Discussion by FIELD, J., of the liability of owners or keepers of dogs under G. L. (Ter. Ed.) c. 140, § 155, and of the history of that statute.

Under G. L. (Ter. Ed.) c. 140, § 155, the owner or keeper of a rabid dog was liable in double damages for rabies contracted from a bite of the dog, regardless of his negligence or knowledge that the dog was rabid.

TORT. Writ dated October 30, 1928.

The action was tried in the Superior Court before *Greenhalge*, J. There was a verdict for the plaintiff in the sum of $2,500. The defendant alleged exceptions.

*D. J. Triggs*, (*J. D. O'Connell* with him,) for the defendant.

*J. M. Gavan*, for the plaintiff.

FIELD, J. This is an action of tort brought by the administrator of the estate of Pompeio Leone. The declaration is in two counts, the first to recover for the death of the plaintiff's intestate as a result of his having been bitten by the defendant's dog, and the second to recover double damages for the conscious suffering of the plaintiff's intes-

tate resulting from his having been bitten by the defendant's dog when it was suffering from rabies. The plaintiff was required to elect between these two counts and elected to go to the jury on the second count, waiving the first count. There was a verdict for the plaintiff. The case comes to this court on the defendant's exceptions to the denial of his motion for a directed verdict on the second count of the declaration and to the refusal of the judge to instruct the jury as requested.

There was no error.

The evidence warranted a finding that the intestate was bitten by a dog owned by the defendant, that the dog had rabies, and that as a result of being bitten by the dog the intestate contracted rabies and, more than a month after he was bitten, died as a result of rabies so contracted. There was evidence that the dog before it bit the plaintiff had not exhibited any of the usual symptoms of a rabid dog and there was "evidence that the defendant had no knowledge or reason to suspect that his dog was rabid, and no evidence to the contrary." There was "contradictory evidence as to the vicious character of the defendant's dog."

The plaintiff, on the evidence, is entitled to recover, if at all, only under G. L. (Ter. Ed.) c. 140, § 155, which is as follows: "The owner or keeper of a dog shall be liable in tort to a person injured by it in double the amount of damages sustained by him."

Under this statute the owner or keeper of a dog is liable for double damages for injury resulting from an act of the dog without proof, as required by the common law, that its owner or keeper was negligent or otherwise at fault, or knew, or had reason to know, that the dog had any extraordinary, dangerous propensity, and even without proof that the dog in fact had any such propensity. *Canavan* v. *George, ante,* 245, and cases cited. Though this principle is usually stated in terms of proof, liability of an owner or keeper of a dog under the statute is not negatived by proof that such owner or keeper was not at fault, that he neither knew, nor had reason to know, that the dog had any extraordinary, dangerous propensity, or that the dog had no

such propensity. The wrong actionable under the statute "consists not in the act of the master in owning or keeping, or neglecting to restrain, the dog, but in the act of the dog for which the master is responsible." *LeForest* v. *Tolman,* 117 Mass. 109, 110. See also *Riley* v. *Harris,* 177 Mass. 163, 165; *Somers* v. *Broderick,* 281 Mass. 550, 553. This statute as it stood in Rev. Sts. c. 58, § 13, contained a provision that in an action thereunder "the defendant may plead the general issue, and give any special matter in evidence, in excuse or justification." See also St. 1797, c. 53, § 5; St. 1798, c. 54, § 3. Compare St. 1812, c. 146, § 3. This provision was omitted in Gen. Sts. c. 88, § 59, and in later revisions, apparently because of changes made by the practice act in rules of pleading (see St. 1852, c. 312, §§ 12, 14, 18; see now G. L. [Ter. Ed.] c. 231, §§ 22, 25, 28), and not for the purpose of changing the substantive law. But this express provision did not import that it could be shown in excuse or justification that the owner or keeper of a dog causing injury was without fault, that the dog had no extraordinary, dangerous propensity, or that the owner or keeper neither knew, nor had reason to know, that it had any such propensity. And no such conclusion is to be drawn from the fact that fault of the person injured contributing to the injury prevents recovery of damages by him. See *Munn* v. *Reed,* 4 Allen, 431, 433; *Ryan* v. *Marren,* 216 Mass. 556, 559.

The defendant contends, however, that the principles stated are inapplicable to an injury caused by a rabid dog. More specifically he contends that G. L. (Ter. Ed.) c. 140, § 155, does not apply to such a dog, or at least that it does not impose upon the owner or keeper of such a dog liability for an injury caused by reason of the dog's disease if such owner or keeper neither knew, nor had reason to know, that the dog was rabid. The instructions requested by the defendant and refused by the trial judge embodied these contentions. They were refused rightly since the contentions cannot be sustained.

At common law the principles governing liability for injury caused by a dog afflicted with canine disease were the

same as those governing liability for injury caused by a dog having any other dangerous propensity. Consequently at common law, in the absence of negligence or other fault of the owner or keeper of a rabid dog, it was essential to his liability for injury caused by such dog by reason of its canine disease that he knew or had reason to know that the dog was rabid. *Andrews* v. *Jordan Marsh Co.* 283 Mass. 158, 161–162, and cases cited. The statute, now G. L. (Ter. Ed.) c. 140, § 155, imposes a new and different liability. *Canavan* v. *George, ante,* 245. But nothing in the terms of this statute imports that it is not applicable to a rabid dog or that the principles already stated governing liability thereunder of an owner or keeper of a dog for injury caused by it are not applicable to the liability of an owner or keeper of a rabid dog for injury caused by it by reason of its disease. Nor is either of these conclusions to be drawn from the history of the statute. Though there were earlier statutes on the general subject (see St. 1791, c. 38, § 4; St. 1797, c. 53, § 5; St. 1798, c. 54, § 3), the provisions now embodied in G. L. (Ter. Ed.) c. 140, § 155, were enacted in substantially their present form in St. 1812, c. 146, § 3. St. 1812, c. 146, was entitled "An Act in addition to an act, entitled, 'An act to prevent damage by mischievous dogs,'" obviously referring to St. 1791, c. 38. St. 1812, c. 146, § 3, in terms imposed liability upon "the owner or keeper of any dog." The scope of this phrase is not limited by the title of the act, however limited may have been the application of the act to which this act was "in addition." *Canavan* v. *George, ante,* 245. A previous statute, St. 1797, c. 53, was entitled "An Act To Lessen The Dangerous Evils Of Canine Madness And Other Injuries Occasioned By Dogs," and recited in a preamble that "many and distressing evils have taken place in various parts of this Commonwealth from Canine Madness, and other injuries occasioned by Dogs." There was, however, no express reference in the text of the statute to "Canine Madness" or rabid dogs. By § 5 of this statute liability was imposed for damage done by "any dog or dogs." Clearly this section, especially in view of the title

and the preamble of the act (see *Brown* v. *Robinson*, 275 Mass. 55, 57), was intended to impose liability for an injury caused by a rabid dog in accordance with the principles applicable to injuries caused by other dogs. However, by St. 1798, c. 54, entitled "An Act In Addition To An Act, Entitled, 'An Act To Prevent Damage By Mischievous Dogs,' Passed February Twenty Fifth, 1792" (St. 1791, c. 38), St. 1797, c. 53, was repealed, but in § 3 thereof § 5 of St. 1797, c. 53, was reënacted in substantially the same terms. The object of the repeal seems to have been to eliminate certain provisions for taxes on dogs contained in the earlier statute. It cannot be inferred from such repeal of the earlier statute by a statute which did not refer specifically in its title to the "Evils Of Canine Madness" that it was intended thereby to effect a change in the part of the statute which was reënacted, so as to exclude rabid dogs from its application. Nor can it be inferred from such repeal that later statutes dealing with the subject (St. 1812, c. 146, § 3, and its revisions) were not intended to apply to rabid dogs as fully as to other dogs. Indeed in a general statement in *Blair* v. *Forehand*, 100 Mass. 136, 142, of the "dangers sought to be prevented by the dog laws of the Commonwealth," "distressing evils from canine madness" are included.

It is urged in substance by the defendant that G. L. (Ter. Ed.) c. 140, § 155, is so unreasonable as applied to a rabid dog that an exception therefrom of a rabid dog, or at least of such a dog whose owner or keeper neither knew, nor had reason to know, that it was rabid, ought to be implied. From the standpoint of a person injured the serious nature of the harm which may be caused by a rabid dog furnishes even greater reason for giving protection against such a dog than against other dogs. Compare *Andrews* v. *Jordan Marsh Co.* 283 Mass. 158, 162. On the other hand the hardship imposed on the owner or keeper of a rabid dog by making him liable even to the extent of double damages for injury caused by such dog to a person without fault differs only in degree from that imposed on the owners and keepers of other dogs. Doubtless one of the purposes of

the statute was to relieve, as a matter of trial procedure, a person injured by a dog from the burden of proving all the essentials of the common law liability. This purpose applies as fully to injury caused by a rabid dog as to an injury caused by any other dog. The statute, however, made more than a procedural change. A purpose of the statute, especially of the provision therein for double damages as a part of the remedy (*Somers* v. *Broderick*, 281 Mass. 550, 553), may have been to insure care on the part of an owner or keeper of a dog as to the kind of dog which he owned or kept and the restraint which he exercised over such dog. *Sherman* v. *Favour*, 1 Allen, 191, 192. In spite of the difficulty of guarding against injury as the result of a dog becoming rabid, this purpose is not wholly inappropriate to the case of a rabid dog.

The underlying principle of the statute, however, is clearly that the risk of harm resulting from the act of a dog to a person who is without fault, so far as this harm can be measured in damages, is placed upon the owner or keeper of the dog and not upon the faultless injured person. There is no such difference between the risk of harm from a rabid dog and the risk of harm from any other dog that the exclusion of the rabid dog from any of the provisions of the statute broad enough to apply to such a dog is to be implied. As was said in a strong dissenting opinion in *Elliott* v. *Herz*, 29 Mich. 202, 205–206, in regard to a similar statute, "it keeps in view *all*, and not merely *part* of the considerations of danger, and holds the person who chooses to take the hazard of owning or keeping a dog, to the stringent responsibility marked out. When we closely examine the matter, we are forced to think that it is inconsistent with the spirit of this law to divide the risk incident to a person's election to hold such an animal, and subject the party thus voluntarily keeping what the law treats as something dangerous for the least harmful of the possible consequences, and cast upon innocent third persons, who have had no share in the origination or perpetuation of the cause of danger, the most dire and serious of the loss and mischief which result. . . . The abstract propriety of the regulation is something for

legislative and not judicial consideration." See also the dissenting opinion in *Legault* v. *Malacker*, 166 Wis. 58, 62, which deals with a similar statute. We are not persuaded to a contrary view by the decisions and the prevailing opinions in these cases.

For the reasons stated in connection with the refusal of instructions requested by the defendant, the motion for a directed verdict was denied rightly. Whether the denial of this motion could be sustained on any other ground need not be considered.

*Exceptions overruled.*