OLGA M. HOLTON *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    May 3, 1939. — May 24, 1939.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Negligence*, Street railway: obnoxious passenger.    *Carrier*, Of passengers.

Evidence, that a passenger on a street railway car manned by a single operator sustained injuries from being pushed by an excessively intoxicated passenger whose condition and conduct were known to the operator when he was admitted and while in the car, and that the operator did nothing to prevent the injury, warranted a finding that the injuries were caused by negligence of the operator for which the street railway company was liable.

TORT. Writ in the Superior Court dated May 20, 1935.

A verdict for the plaintiff in the sum of $2,347.52 was recorded with leave reserved by *Walsh*, J., who then ordered entered a verdict for the defendant and reported the case to this court.

*J. Kruger*, (*A. S. Gordon* with him,) for the plaintiff.

*Joseph Wentworth, (J. M. Hall* with him,) for the defendant.

RONAN, J.   The plaintiff recovered a verdict for personal injuries on account of being pushed off a car by an intoxicated passenger.   The judge reserved leave, entered a verdict for the defendant, and reported the case to this court.

Considering the evidence in the light most favorable to the plaintiff, a jury could find the following facts: The plaintiff became a passenger upon one of the defendant's street cars, which was manned by a single employee.   After the car had proceeded a short distance, it stopped at a regular stopping place.   The plaintiff noticed that it had stopped for an unnecessarily long period and she saw an intoxicated man, who was talking in a loud voice and swearing, entering the car and assisting himself by taking hold of the bar at the front end.   He was unsteady upon his feet, and after bumping into a post at the rear of the operator, he proceeded along the aisle, "hollering and swearing in a loud voice," bumping into passengers seated on both sides of the aisle, and sat in the seat directly behind the plaintiff.   This seat was about fifteen feet from the front vestibule.   The operator was looking toward this man as he went along the aisle, and did not start the car until the man was seated.   This passenger rubbed the back of the seat occupied by the plaintiff and his hand came in contact with the plaintiff's back.   The car reached the terminal in ten minutes after he had entered it, but during that time he continued to talk and swear in a loud voice.   When the car arrived at the terminal, the plaintiff stood up and started to leave, when this passenger pushed her.   She told him to stop pushing.   He proceeded directly behind her as she was going toward the front door.   He again pushed her and she again requested him to stop.   As she was reaching for the bar in the center of the door to assist her in alighting, this intoxicated passenger pushed her, throwing her from the vestibule of the car onto the station platform; she landed in a sitting position, and her left leg, which was buckled up beneath her, was broken.

It is settled by our decisions that a common carrier is bound to use the same degree of vigilance and care in guarding and protecting a passenger from all dangers and perils that might ordinarily and naturally be encountered during his transportation, including any annoyance, violence or harm that may reasonably be expected from other passengers, as is required in the maintenance of its tracks, cars and equipment, in the selection, regulation and supervision of its employees, and in the conduct, control and management of its business. Our law recognizes but a single uniform standard of care that a carrier in all the various aspects of its business is required to exercise toward its passengers. *Simmons* v. *New Bedford, Vineyard & Nantucket Steamboat Co.* 97 Mass. 361. *Dodge* v. *Boston & Bangor Steamship Co.* 148 Mass. 207, 218. *Nichols* v. *Lynn & Boston Railroad,* 168 Mass. 528. *Kuhlen* v. *Boston & Northern Street Railway,* 193 Mass. 341. *Beverley* v. *Boston Elevated Railway,* 194 Mass. 450. *Glennen* v. *Boston Elevated Railway,* 207 Mass. 497.

In the performance of its undertaking with the plaintiff, the defendant was bound to exercise reasonable care according to the nature of its contract with her. A passenger has no control over the operation of the cars, the action of the employees, or the conduct of the business. There is little that a passenger can do for his own safety in using the defendant's instrumentalities, but he must rely to a very great extent upon the care and vigilance of the carrier. In view of the control possessed by the carrier and the serious consequences that might be incurred if the carrier should be derelict in the full performance of its duties, the care that it must exercise is reasonable care in such circumstances, which may properly be referred to as the utmost care consistent with its undertaking in connection with all other matters that ought to be considered in the operation of its business. It has sometimes been spoken of as the highest degree of care compatible with the practical performance of all of its duties in accordance with the demands of the public as to accommodations, convenience, comfort, rapidity and expense. *Dodge* v. *Boston & Bangor*

*Steamship Co.* 148 Mass. 207, 217, 218.   *Gardner* v. *Boston Elevated Railway,* 204 Mass. 213, 216, 217.   *Donahoe* v. *Boston Elevated Railway,* 214 Mass. 70.   *Bilodeau* v. *Fitchburg & Leominster Street Railway,* 236 Mass. 526.   *Fitzgerald* v. *Boston Elevated Railway,* 274 Mass. 287.   *Turner* v. *Berkshire Street Railway,* 292 Mass. 313.   The defendant's liability depends upon whether the plaintiff has shown that the defendant's employee, in permitting the intoxicated person to become and remain a passenger up to the time of the plaintiff's injury without doing anything to prevent its occurrence, did not exercise the standard of care that has been mentioned.   Of course, the defendant was not an insurer of the plaintiff's safety, and the mere occurrence of such an accident does not establish the defendant's liability.   *Joy* v. *Winnisimmet Co.* 114 Mass. 63.   *Jacobs* v. *West End Street Railway,* 178 Mass. 116.   *McCumber* v. *Boston Elevated Railway,* 207 Mass. 559, 563.

The defendant was a common carrier and every one who presented himself in proper condition was entitled to use the defendant's facilities upon the payment of the usual charge.   "The general rule that a common carrier is bound to accept anybody and everybody who presents himself for transportation and pays the regular fare, has its limitations.   A common carrier is bound to care for all who have become its passengers.   For that reason not only is it not bound to accept but is under obligation to refuse to accept as a passenger . . . one who because of intoxication or for any other reason would be offensive to other passengers. *Vinton* v. *Middlesex Railroad,* 11 Allen, 304.   *Murphy* v. *Union Railway,* 118 Mass. 228.   *Hudson* v. *Lynn & Boston Railroad,* 178 Mass. 64."   *Connors* v. *Cunard Steamship Co. Ltd.* 204 Mass. 310, 315.   The defendant owed a duty to its passengers and could not expose them to dangers created by its negligence.   It would be a plain breach of its duty to them to accept as a passenger an intoxicated person who manifested a boisterous and belligerent attitude and threatened to assault persons within his reach. Liability is not shown by the mere presence of an intoxi-

cated passenger upon a car and the fact that he had caused an injury to another passenger. It cannot be said as matter of law that the failure of the one in control of a drunken person to restrain him under such supervision that he cannot possibly harm another makes the one in charge absolutely liable if such harm results. *Topping* v. *Eastern Massachusetts Street Railway*, 252 Mass. 270, 273. Liquor affects individuals in various ways and it is sometimes difficult to determine degrees of intoxication. "Whatever difficulties there may be in framing with precision a definition of the extent of inebriety which falls short of and which constitutes drunkenness, there is a distinction between that crime on the one hand and merely being under the influence of liquor on the other hand, which is recognized in common speech, in ordinary experience, and in judicial decisions." *Cutter* v. *Cooper*, 234 Mass. 307, 317, 318. *Commonwealth* v. *Hughes*, 133 Mass. 496. *Commonwealth* v. *Lyseth*, 250 Mass. 555. But the manifestations of intoxication may present different aspects. While it might not be easy accurately to describe each and every minute detail indicative of intoxication, yet the principal objective symptoms are so well known that witnesses have always been permitted to express their opinion as to the inebriety of a person. *Edwards* v. *Worcester*, 172 Mass. 104. *Gorham* v. *Moor*, 197 Mass. 522, 524.

The defendant's employee, mindful of the high degree of responsibility imposed upon him, would not be warranted in receiving as a passenger one whose condition was such that it was reasonably probable that his presence upon the conveyance would result in discomfort, annoyance or physical harm to a passenger. It was a question of fact for the jury to determine whether the employee in accepting the intoxicated man as a passenger was acting consistently with the obligations that the defendant owed the plaintiff. If the jury found that the man's condition was such as not to justify his rejection as a passenger, but that he showed signs of intoxication, then they could also find that, having permitted such a one to come upon the conveyance, there was a duty upon the employee to keep

a closer watch over him than would be required in the case
of an ordinary passenger. There was evidence not only
as to the manner in which the man boarded the car and
finally arrived at his seat but also as to his loud and ob-
jectionable speech and his successive pushing of the plain-
tiff in spite of her oral protestations before she was pre-
cipitated from the car. The jury could find from the
physical arrangement of the car, the distance between
the intoxicated man and the employee when he indulged
in his objectionable conduct, and the opportunity that the
employee had to observe and apprise himself of the situa-
tion, that the latter saw and heard what was happening
in the car. *Commonwealth* v. *Klosowski,* 252 Mass. 149,
151. *Commonwealth* v. *Hamel,* 264 Mass. 564, 570. If
that was the actual situation, then the employee should
have seasonably adopted all available means to guard
and protect his passengers by removing the source of an-
noyance to which they had been subjected, and by elimi-
nating an imminent menace of physical harm by promptly
ejecting the offender. *Vinton* v. *Middlesex Railroad,* 11
Allen, 304. *Sullivan* v. *Old Colony Railroad,* 148 Mass.
119. *Thayer* v. *Old Colony Street Railway,* 214 Mass. 234.
There was evidence that the motorman did nothing to
prevent injury to the passengers. There was a series of
events over an appreciable length of time, within the
vision and hearing of the defendant's employee, of such
a character and nature that the precipitation of the plain-
tiff from the car could be found to be, not a sudden, unex-
pected act but one which could reasonably be anticipated
from a course of antecedent conduct which was negligently
permitted to continue unheeded and unchecked. *Nute* v.
*Boston & Maine Railroad,* 214 Mass. 184. *Isenberg* v. *New
York, New Haven & Hartford Railroad,* 221 Mass. 182.
See *Treat* v. *Boston & Lowell Railroad,* 131 Mass. 371;
*Kuhlen* v. *Boston & Northern Street Railway,* 193 Mass.
341; *Glennen* v. *Boston Elevated Railway,* 207 Mass. 497;
*Coy* v. *Boston Elevated Railway,* 212 Mass. 307; *Morse* v.
*Newton Street Railway,* 213 Mass. 595; *Danovitz* v. *Blue
Hill Street Railway,* 218 Mass. 42; *Bryant* v. *Boston Ele-*

*vated Railway,* 232 Mass. 549; *Franz* v. *Holyoke Street Railway,* 239 Mass. 565.

There was evidence that there was no intoxicated man aboard the car and that the plaintiff slipped from the car to the station platform as she was alighting. But as there was sufficient evidence to sustain the verdict for the plaintiff, we cannot, as the defendant urges, pass upon the credibility of witnesses or the weight of the evidence. *Emery* v. *Emery,* 222 Mass. 439. *Corson* v. *Comiskey,* 250 Mass. 398.

*Judgment on the verdict returned by the jury.*