Alvena Camp *vs.* Rex Incorporated.

Samuel Camp *vs.* Same.

Middlesex.    November 9, 1939. — December 6, 1939.

Present: Field, C.J., Donahue, Lummus, Dolan, & Ronan, JJ.

*Public Hall. Public Safety. License. Proximate Cause. Negligence,*
Violation of condition of license, Violation of law, Public hall, Contributory, Invitee, Trespasser, Licensee.

A condition of a license for a public hall granted under G. L. (Ter. Ed.)
c. 143, § 34, that "all seats . . . shall be securely fastened to the
floor or otherwise secured in place," was within the power of the
licensing officer and was valid; and its purpose was not merely protection of the public against fire but against other dangers such as
crowding and confusion.
Failure of the proprietor of a public hall to have portable chairs secured
in place on the floor could be found to be the proximate cause of injuries sustained by a patron seated in the second row of the chairs
when a crowd watching a dispute in progress in front surged back
against the first row and so crowded the patron that he attempted to
get to the aisle by walking on the chairs in his row, whereupon the
movement of the crowd tipped over a chair on which he was walking
and he was thrown to the floor.
Under G. L. (Ter. Ed.) c. 143, § 35, violation by the proprietor of a public hall of a valid condition of a license granted him under § 34 was
evidence of negligence toward a patron who sustained injuries proximately resulting from the violation.
On evidence that a patron of a public hall seated in the second of rows
of portable chairs not secured in place on the floor was so crowded by
other patrons surging back against the front row that he attempted
to get to the aisle by walking on the chairs in his row and was injured
when a chair on which he was walking was overturned, it could not
properly be ruled as matter of law either that his status had been
changed from that of invitee to that of trespasser or licensee or that
he was guilty of contributory negligence.

Two actions of tort. Writs in the Superior Court
dated December 27, 1935.

At the trial before *Greenhalge,* J., there were verdicts for
the plaintiffs in the sums, respectively, of $1,500 and $367.
The defendant alleged exceptions.

*D. E. Murphy,* (*W. A. Ryan* with him,) for the defendant.

*M. J. Cohen & P. H. Ready*, for the plaintiffs, submitted a brief.

RONAN, J. The plaintiff in the first case, hereinafter referred to as the plaintiff, with three companions had attended a wrestling exhibition at the defendant's hall, occupying a seat in either the first or the second row from the ring and five seats in from the aisle. Five or six hundred people attended the exhibition. At the conclusion of the last contest a dispute arose in the ring between the contestants and the referee, and a crowd quickly collected about the ring to witness the fracas. The plaintiff was preparing to leave her seat, when the crowd surged back from the ring to avoid being hurt when it appeared that one contestant was about to throw his opponent out of the ring. The plaintiff was so badly crowded that she got up on the seat in which she had been sitting and intended to walk upon the other four seats to reach the aisle and escape from the commotion, but the movement of the crowd caused the chair upon which she was walking to tip backwards, precipitating her to the floor. The jury returned a verdict for the plaintiff and for her husband, the plaintiff in the second case, and the cases are here upon the defendant's exceptions to the denial of its motions for directed verdicts.

The department of public safety had duly established rules and regulations relative to the equipment of public halls, one of which (section 10), referring to auditorium seating, in so far as material, provided that "For audience halls using portable seats, floor cleats or other approved device for securing the seats in place shall be used." The commissioner of public safety in accordance with G. L. (Ter. Ed.) c. 143, § 34, had issued to the defendant a license to use its premises as a public hall upon certain conditions set forth in the license, one of which was that "all seats in the audience hall and galleries shall be securely fastened to the floor or otherwise secured in place."

The defendant contends that the department of public safety had no authority to regulate the use of portable chairs in a public assembly hall, and, if it did, that the only purpose of such a rule was to protect the public in

case of fire and that the regulation was inapplicable to a case where one was attempting to escape from a crowd. *Landers* v. *Brooks*, 258 Mass. 1. *Aldworth* v. *F. W. Woolworth Co.* 295 Mass. 344.

The commissioner was expressly required, G. L. (Ter. Ed.) c. 143, § 54, to issue regulations necessary for the uniform enforcement of §§ 15 to 52 of this chapter. Some of these sections do not relate to fire hazards and the chapter itself aims to furnish adequate protection to the public in the use of buildings to which they resort. Of course, fire is one of the principal dangers to be averted, but the chapter is also concerned with various other matters which must be regulated and controlled in the public interest. We need not, however, determine the validity of the regulation as it does not go so far as the condition contained in the defendant's license that plainly requires all seats to be securely fastened to the floor or otherwise secured. We assume in favor of the defendant that the holder of a license, which he voluntarily sought and secured and which regulates the use of his property, can attack a provision of his license upon the ground that it is unauthorized by law. See *Burgess* v. *Mayor & Aldermen of Brockton*, 235 Mass. 95; *Morley* v. *Police Commissioner of Boston*, 261 Mass. 269.

The commissioner of public safety is authorized to grant licenses for public halls located outside of Boston, and he "may require such changes in the structural or other condition of any building before issuing any license as in his opinion the public safety requires" provided such changes shall not be in excess of the requirements for a new building. G. L. (Ter. Ed.) c. 143, § 34. A licensee is responsible for noncompliance with the terms of his license. G. L. (Ter. Ed.) c. 143, § 35. Inspectors of the division of inspection of the department of public safety must report violations of the conditions of a license and upon the failure of the licensee to comply with such conditions, the license shall be revoked. G. L. (Ter. Ed.) c. 143, § 38. No building shall be used as a public hall until a license therefor, or a certificate from an inspector, has been issued, and such use without a license or certificate or in violation of the

conditions of a license is punishable by fine or imprisonment and the revocation of the license, if one has been granted. G. L. (Ter. Ed.) c. 143, § 52. These sections recognize the fact that licenses for public halls may contain conditions in accordance with which the use of the hall is permitted. It would be difficult to enact legislation in such detail as to govern specifically each and every instance presented in licensing the use as a public hall of structures varying widely in structural strength, materials, shape, size, exits, surrounding property and divers other factors that must be considered in determining what should be required for the adequate protection of the public who might frequent them. The matter is settled in principle by *Leach* v. *State Fire Marshal*, 278 Mass. 159, which held that, in reviewing the action of the city council of a city which had granted a license for the keeping, storage and sale of petroleum products, the marshal, acting under G. L. c. 148, § 14, as amended by St. 1930, c. 399, § 1 (see now G. L. [Ter. Ed.] c. 148, § 13), which made no express mention of the imposition of any conditions, might approve the granting of a license if certain additional conditions, prescribed by him, were observed by the licensee. In *Commonwealth* v. *Willcutt*, 259 Mass. 406, it was decided that the board of aldermen had authority in granting a license under G. L. c. 148, § 14, to prescribe reasonable conditions for the use of the licensed premises. We think the commissioner in the case at bar had the power to require portable chairs to be properly fastened.

The purpose of this condition is to protect the public, not merely in case of fire but also from any other danger that might be encountered and which might be entirely prevented or greatly minimized if the chairs were securely attached to the floor. Chairs connected in groups of four and resting upon a single layer of paper laid over a slippery dance floor might easily be moved as the audience was leaving the hall, and a person who stumbled or fell on them might receive a serious injury. The moving of a row of chairs toward another row might cause confusion and harm to one attempting to get from his seat to the aisle.

The condition in the license is to be fairly and,reasonably construed, giving to the terms in which it is couched their usual and natural significance, and considering the mischief that it seeks to reach and the aim sought to be accomplished. We can only construe the condition; we cannot read into it an exception when upon its face it contains none. It cannot rightly be limited to a fire prevention measure. *Tax Commissioner* v. *Putnam*, 227 Mass. 522. *United States Trust Co.* v. *Commissioner of Corporations & Taxation*, 299 Mass. 296.

The jury could find that the plaintiff was seated in the second row and that, if the chairs had been attached as prescribed by the license, the seats in the first row would have prevented those who surged back from the ring from crowding the plaintiff to such an extent that she was unable to move (as she testified, stepping "all over my feet and everything so I tried to get out of the way"), she would not have had to walk upon the chairs in an endeavor to reach the aisle, and the chair upon which she was walking would not have tipped over. The jury could find that the presence and action of the crowd were mere conditions and not causes of the plaintiff's injuries. Even if it could be found that the action of the crowd was a contributing cause, that would not exonerate the defendant if its negligence helped to bring about the plaintiff's injuries. *Burke* v. *Hodge*, 217 Mass. 182. *Leahy* v. *Standard Oil Co. of New York*, 224 Mass. 352. But the statute, G. L. (Ter. Ed.) c. 143, § 35, expressly provides that a "licensee shall be responsible, civilly and criminally . . . for non-compliance with the conditions" of his license. The violation of this statute could have been found to be evidence of negligence and we need not decide if liability could have been based primarily upon its violation. *New England Box Co.* v. *New York Central & Hudson River Railroad*, 210 Mass. 465. *Leone* v. *Falco*, 292 Mass. 299. *Gallagher* v. *Wheeler*, 292 Mass. 547. *Baggs* v. *Hirschfield*, 293 Mass. 1.

The conduct of the plaintiff must be judged in the light of the circumstances in which she found herself. She did not cause the collection of the crowd. It was for the jury

to determine whether she was acting reasonably in attempting to use the chairs in an effort to reach the aisle. *Ingalls* v. *Bills,* 9 Met. 1. *Steverman* v. *Boston Elevated Railway,* 205 Mass. 508. *Nute* v. *Boston & Maine Railroad,* 214 Mass. 184. If the plaintiff was acting reasonably in using the chairs as a means to reach the aisle, then it could not be ruled as matter of law that she thereby changed her status of invitee to that of a trespasser or licensee. *Cody* v. *New York & New England Railroad,* 151 Mass. 462. *Dixon* v. *New York, New Haven & Hartford Railroad,* 207 Mass. 126. The cases at bar are plainly distinguishable from *Waterman* v. *President & Fellows of Harvard College,* 290 Mass. 535, where the plaintiff, voluntarily and not for the purpose of avoiding an imminent danger, stood upon the back row of seats to witness a football game, when there was no barrier to prevent him from falling backwards into an open space behind the seats and the defendant was not required by any specific provision of the statutes or a governing rule or regulation to furnish a precaution which would have averted the injury.

*Exceptions overruled.*