HAZEL L. RICH *vs.* BOSTON ELEVATED RAILWAY COMPANY (and a companion case [1]).

Middlesex.   May 3, 1944. — June 27, 1944.

Present: FIELD, C.J., QUA, RONAN, & WILKINS, JJ.

*Negligence*, Obnoxious person; Street railway: obnoxious person.

Evidence, at the trial of an action for personal injuries, sustained by a passenger on a crowded subway platform of a street railway company when knocked down by one of two boys playing tag, would not have warranted a verdict for the plaintiff where it did not show that such conduct of the boys was reasonably to be anticipated or that employees of the company on the platform were aware, or should have been aware, of the boys' presence before the accident.

TWO ACTIONS OF TORT. Writs in the Superior Court dated April 16, 1941, and January 22, 1942.

The cases were tried together before *Williams*, J.

---

[1] The companion case is by John W. Rich against the same defendant.

*G. A. McLaughlin,* (*W. H. McLaughlin* with him,) for the plaintiffs.

*F. P. Garland,* (*R. B. Snow* with him,) for the defendant.

WILKINS, J.   The female plaintiff, a passenger, hereinafter called the plaintiff, sues in tort for injuries sustained in a subway station by reason of being knocked down by children whom the defendant, it is alleged, had "negligently permitted to play on the platform unheeded and unchecked for a considerable period of time."   Her husband sues in tort for consequential damages.   At the conclusion of the evidence the judge granted the defendant's motion for a directed verdict in each case.

The plaintiff was the only one to testify on her own behalf.   On March 7, 1941, she rode on an elevated train from Boston to Harvard Square, Cambridge.   As she walked down the ramp to the loading platform where cars left for North Cambridge, Arlington, and Huron Avenue, "a crowd of people came down with her."   At the time she saw two small boys, nine, ten, or eleven years of age, running forward to her right, but gave no more thought to it.   There were "quite a lot of passengers," she could not estimate how many, on the loading platform, but it was "crowded." As the plaintiff stood on the platform about half way between the Huron Avenue stop and a bench at the wall, intending to take a North Cambridge or Arlington street car, either of which would stop at Porter Square, she again "saw the two boys playing around there, generally making considerable noise, and darting in and out of the crowd." "The children were playing and shouting . . . apparently playing tag."   She formed that opinion from the way one chased the other.   She arrived at the platform at 4:22 P.M. The boys "may have come from the Huron Avenue bus because that was where they came as I started down the ramp from there and started chasing one another over toward the newsstand, then they continued working in through the crowd of folks there, hollering as they went, calling to each other."   While she was waiting "she thought, as she remembers vaguely, that there were these hats displayed in the crowd, up toward her right, nearer the North

Cambridge stop, past the Arlington . . . she took it for granted that they were the usual hat worn by Elevated employees; that she thinks there were two of them." From the time of her arrival on the platform until her accident "the boys did not cease playing; . . . it was continuous, and two or three times they were very close to her." At 4:30 P.M. one of these boys ran into her "with good speed" and knocked her down. Two uniformed employees assisted her to a bench. She left her testimony that she stood waiting six or seven minutes. There were six places where cars stopped at the platform, the first two stops in use being for Arlington and Arlington Heights, stops 4 and 5 for North Cambridge, and stop 6 for Huron Avenue. While she was standing, no car came into the subway. In the meantime other trains had come in from Boston. The people on the platform distributed themselves at the various stops. "There was a crowd at the point where she was waiting; . . . there was a crowd at the Huron Avenue stop as well as the North Cambridge stop." There were other people standing so close that she could have touched them if she had tried.

One Shannon, a witness for the defendant, testified that he was employed by the defendant loading cars at the outbound platform at Harvard Square subway where cars run to North Cambridge, Arlington, and Huron Avenue; that on March 7, 1941, he went to work about 4 or 4:15 P.M.; that after 4:15 P.M. the traffic was "good and heavy" up to 6:15 P.M.; that while at the No. 3 stop for Arlington Heights he was informed of the accident and went down to stop No. 6 and told the starter, who was beyond a fence dividing off the place where cars from Waverley and Watertown unloaded; that he went back to the Arlington Heights stop without speaking to the plaintiff; that he did not see the accident or any boys playing; that he had instructions to stop disorderly conduct; that he was kept pretty busy at loading; that the subway was "pretty well crowded" at that hour, and he could not see what happened.

One Morrisey, a witness for the defendant, testified that on the day in question he was starter for the defendant at

the platform in question; that his duties also "took in" the unloading platform from Watertown and Waverley; that in the afternoon when the rush began, the bulk of the traffic was on the loading platform; that No. 1 stop was not being used; that he learned from Shannon that there had been an accident as he was returning from turning on the lights; that the light switch was one hundred fifty yards from the fence in the direction of Mt. Auburn Street; that prior to turning on the lights, he had loaded a Huron Avenue car and it had gone from berth 6; that he had been gone five or six minutes and on the unloading side of the fence met Shannon, who said a woman had fallen on the platform; that he talked with the woman who had been injured, and she did not tell him that she had been knocked down by a boy; that he had not seen any boys around there; that he called for an ambulance; that "business begins to pick up there" around 4 or 4:15 P.M., and cars came every two or three minutes, and subway trains every four minutes; that he recalled no tie-up of traffic that afternoon; that he and Shannon were the only attendants around the subway at that time that he knew of; that he supposed there were other employees up at the rapid transit platform; and that he left the loading platform at 4:25 P.M. to put on the lights.

The judge's ruling was right. The testimony was undisputed and taken at its most favorable aspect to the plaintiff would not warrant a finding that the defendant failed in any duty owed the plaintiff either by reason of not anticipating and guarding against such an occurrence or by reason of failure to discover these two particular boys and to stop this one particular game. "A common carrier is not responsible for injuries to a passenger caused by the misconduct of others, which it could not have foreseen and guarded against." *Eaton* v. *New York, New Haven & Hartford Railroad*, 227 Mass. 113, 115. See *Marr* v. *Boston & Maine Railroad*, 208 Mass. 446, 447. There was no evidence of any previous playing by boys at this particular place. It was not normally to be anticipated that the crowd at this platform at this time of the afternoon would contain boys who would indulge in a propensity to play tag in such a way

as to cause injury to passengers. The defendant "is not obliged to foresee the impossible or highly improbable, and it is not called upon under ordinary circumstances to expect that one passenger will assault another; or that because one passenger is engaged in frolic or sport with another, such conduct will result in injury to one of them." *Isenberg* v. *New York, New Haven & Hartford Railroad,* 221 Mass. 182, 183. See *Langley* v. *Boston Elevated Railway,* 223 Mass. 492. "A common carrier does not insure to its passengers immunity from harm. It is engaged in a public service which must be managed in such a manner as to be practical and adapted to the needs of contemporary society, both as to expense, convenience, comfort and rapidity. Hence it cannot be held responsible for manifestations of lawlessness, heedlessness, impetuosity or force which a high degree of prevision and sagacity could not reasonably be expected to forestall. Injury arising from the sporadic act of an individual or the aggregated impulses of a throng, if outside the limits of conduct reasonably to be apprehended by one under a strong legal duty to be most keenly sensitive to guard against preventable wrongs, affords no ground of liability. The carrier is not bound to adopt all possible precautions nor every conceivable safeguard for the safety of passengers, nor to exercise the utmost diligence which human ingenuity can imagine to avert injury." *Glennen* v. *Boston Elevated Railway,* 207 Mass. 497, 498–499. Cases are distinguishable where there was a dangerous habit or custom of other passengers, as in *Nichols* v. *Lynn & Boston Railroad,* 168 Mass. 528, *Kuhlen* v. *Boston & Northern Street Railway,* 193 Mass. 341, *Glennen* v. *Boston Elevated Railway, supra, Coy* v. *Boston Elevated Railway,* 212 Mass. 307, *Collins* v. *Boston Elevated Railway,* 217 Mass. 420, *Danovitz* v. *Blue Hill Street Railway,* 218 Mass. 42, and *Franz* v. *Holyoke Street Railway,* 239 Mass. 565, or where unusual conditions should have been anticipated, as in *Treat* v. *Boston & Lowell Railroad,* 131 Mass. 371, *Morse* v. *Newton Street Railway,* 213 Mass. 595, and *Nute* v. *Boston & Maine Railroad,* 214 Mass. 184. Neither is this a case where the defendant's employees took no action to meet a dangerous situation presently discovered,

as in *Morse* v. *Newton Street Railway, supra, Isenberg* v. *New York, New Haven & Hartford Railroad,* 221 Mass. 182, *Franz* v. *Holyoke Street Railway, supra, Holton* v. *Boston Elevated Railway,* 303 Mass. 242, and *McFadden* v. *Bancroft Hotel Corp.* 313 Mass. 56. All the evidence showed that the two employees of the defendant were not aware of the presence of the boys. Shannon was fully occupied at another part of the platform, and we do not think it was negligence for Morrisey, who likewise was engaged in loading cars, to fail to observe the boys in the time between 4:22 P.M. and his departure to turn on the lights at 4:25 P.M. It cannot be said that another employee should have taken his place while he was gone to turn on the lights. See *Kuhlen* v. *Boston & Northern Street Railway,* 193 Mass. 341, 346. As the defendant had not laid out the platform as grounds for tag playing, *Wilson* v. *Norumbega Park Co.* 275 Mass. 422, 425, is distinguishable. In *Fortier* v. *Hibernian Building Association of Boston Highlands,* 315 Mass. 446, there not only had been a long course of previous occurrences, but on the evening in question there had been a dangerous condition existing for a protracted period of time.

As the plaintiff was not entitled to go to the jury, it is unnecessary to discuss her exception to the admission in evidence of the defendant's schedule of cars leaving the platform.

In each case the entry will be

*Exceptions overruled.*