This is an action for damages for the wrongful killing of plaintiff's husband. Plaintiff recovered a verdict and judgment in the sum of $8000, which was reduced by remittitur to $7500, and defendant has appealed.
Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given. The facts stated in their most favorable light to plaintiff are as follows: Deceased was killed about 9:15 A.M. on May 24, 1920, while employed as a track man by the defendant. The accident occurred near the eastern city limits of Kansas City, Missouri, in what is called the Blue River yards of the Terminal Railway Company. At the place of the accident there were two main line tracks numbered 2 and 3, running east and west, and a great number of switch tracks on both sides. No. 2 track, the north one, was used by west-bound trains and No. 3, the south track, by east-bound trains. These two tracks were parallel and about ten feet apart. Plaintiff was struck and killed by one of defendant's east-bound passenger trains, going at the rate of from twenty or twenty-five miles per hour, at a point about 1050 to 1100 feet west of where the tracks curved to the southeast. There was a straight track for the distance mentioned. At the time deceased was killed he was between and near the south railing of track 2 and about 150 or 200 feet west of a signal tower, or arm, extending over the north rail of track 2 at a height of about twenty feet. About 2300 *Page 670 
feet west of the first signal tower and about 2100 feet west of the place of the accident there was a second signal apparatus where the tracks were crossed by the Kansas City Southern Railroad. The tracks between the two signals continued straight. The second signal arm was about thirty or thirty-five feet above the ground.
The accident occurred on Monday morning. The Saturday previous deceased had been installing anchors between the ties and rails of track 2. Deceased, together with twelve other trackmen, worked under a foreman by the name of Penson. At 8:00 o'clock on Monday morning the gang of men assembled at the tool house about a quarter of a mile east of where the accident occurred, and from there went to a place about sixty or seventy yards northeast of the place where deceased was killed where they went to work unloading ties. The deceased did not go with the other men but went to work by himself installing the anchors. About 8:15 Penson, having finished his work at the tool house, joined the men who were unloading the ties. Deceased continued to work in the vicinity of the place where he was killed. From that time until deceased was killed Penson was engaged in various duties of his own. However, sometime before deceased was struck Penson talked to him and at that time deceased was south of track 3 carrying rail achors in his arm. After the accident Penson found that deceased had distributed anchors at places on the south side of track 2 where he was supposed to put them under the track. The first place an anchor was found was close to where deceased had been working on Saturday. The witness was unable to state how long it was before the accident that he saw deceased at this time. "I couldn't say exactly how long it was. It was quite a bit. It was several minutes." He next saw deceased two or three minutes before the latter was killed. At that time Penson was about forty yards northwest of deceased and deceased was walking east between tracks 2 and 3 toward and within twenty or twenty-five feet of the point where deceased was killed and where an excavation *Page 671 
had been made for the purpose of inserting an anchor between the rail and the tie. At this time deceased was carrying a pick and a maul and he turned and looked at Penson. Penson saw deceased no more until he saw him in the air after he was struck by the train. Deceased's pick and maul were found between tracks 2 and 3 near the excavation under the railing of track 2. Penson was the only witness to the occurrence introduced by plaintiff.
Defendant introduced witness Hankenberry, who testified that at the time in question he was employed as an engineer by the Kansas City Terminal Railway; that he was on the south side of his engine cab on the second track north of the track on which the accident occurred; that he saw deceased shortly before he was struck. At that time deceased was a little south of track 3. He saw deceased there pick up some tools, the character of which witness did not notice, and walk in a northeast direction across track 3 and on to the first or south rail of track 2. The witness's engine was moving and at this time some box cars interfered with his view and prevented his seeing plaintiff longer. The last time the witness saw deceased was only "a few seconds" before he was struck. A Santa Fe train going east on track 3 was passing or had already passed.
There was other evidence that the Santa Fe train was ten or fourteen coaches in length and was going at the rate of fifteen miles per hour. The length of each of the coaches on both trains was about forty feet. The evidence shows that about one-half of the Santa Re train had passed deceased at the time he was killed. It had been raining and the atmosphere was heavy. There was a wind blowing from the south at about four miles per hour. The tracks were level but in a low place and the wind was coming from the edge of a bluff, blowing the smoke of the Santa Fe engine downward, causing it to trail along the side of the Santa Fe train between tracks 2 and 3. Each of the engines extended about twenty *Page 672 
inches into the space between the tracks and this narrowed the space to six feet, six inches. There is no evidence tending to show whether the handles and steps of the passing trains projected into this space.
The fireman on the Missouri Pacific train testified that he was on the right-hand side of his engine looking straight ahead at the two signal towers, one 150 or 200 feet east of where plaintiff was killed and the other 2100 feet west; that he was able to see the first signal board from the time he came off the curve on the straight track, and there was evidence from which the jury could say that this was as much as 1100 feet from the place where deceased was struck. He testified that he had a clear view of the first signal for this distance but that he did not see deceased until he got within fifty or seventy feet of him; that there was a dense smoke drifting back and hanging low along the north side of the Santa Fe train and that he was looking for the signal and did not look to see if there was a man on the track; that when he saw deceased the latter had some kind of a tool in his hand and was standing near the south rail of track 2 looking south at the passing Santa Fe train; that he called to the engineer to stop but the engineer did not hear him as the latter had his hand on the whistle lever blowing the whistle; that he then jumped across the cab and called louder to the engineer but at that time the deceased had been struck. The train ran about the distance of nine coaches, which would be 360 feet, after it struck deceased, when it stopped. There was testimony that no warning signal of any kind was given before the train struck deceased. The fireman testified that he did not have a clear view from the time he entered upon the straight track, but could see the signal; that he saw the first signal about a quarter of a mile before reaching it, but that he did not continue to see it from that time until he passed it for the reason that during a part of this time the train was rounding a curve leading to the straight track. *Page 673 
The engineer of the Missouri Pacific train testified that he at no time saw deceased before he was struck although he was looking straight ahead for the two signal apparatuses; that he was not required to pay attention for men on the track but concentrated his attention on the signals. He testified that even if he had been looking for a man on the track, the smoke from the Santa Fe train so obstructed his view that he could not have seen him. He admitted, however, that there was nothing to obstruct his view east of the point where he first saw the Santa Fe engine.
Plaintiff's theory of recovery, as shown by her pleadings and instructions, was based upon the humanitarian doctrine; that is, the failure of the operators of the defendant's engine to take some action to avoid the collision after they actually saw
deceased in a position of peril and oblivious thereof.
Assuming that the Santa Fe train was going fifteen miles per hour, the Missouri Pacific train running at the rate of twenty miles per hour, that one-half of the Santa Fe train had passed deceased at the time the Missouri Pacific train struck him, and that the Santa Fe train consisted of coaches each about forty feet in length, the Santa Fe train had gone 200 feet from the point where deceased was killed after it passed him and prior to the time the Missouri Pacific train struck the deceased. At fifteen miles per hour this 200 feet was covered in nine and one-elevenths seconds. The Missouri Pacific train running at twenty miles per hour would cover a distance of 266-2/3 feet in this length of time. Therefore it was only during the last 266-2/3 feet traversed by the Missouri Pacific engine that the engineer and fireman thereon could not have seen deceased on account of smoke from the other train. Prior to that time or while they were traveling the difference between 1100 feet and 266-2/3 feet, or 833-1/3 feet, they had a clear view down the track straight ahead. They saw the first signal arm, 150 or 200 feet east of deceased but this was twenty feet *Page 674 
above the ground and the smoke near the ground obscured their view of deceased for the last 266-2/3 feet they traveled before they struck him.
Plaintiff's theory of the way in which this accident occurred is stated in her own words as follows:
"From the evidence it appears that within a period of less than three minutes deceased walked between the tracks to the place where he was to work, laid down his maul, and with the pick proceeded to dig a hole underneath the south rail of track 2, in the digging of which he was of necessity compelled to stand between the tracks. The Santa Fe came by so close to where he was working between the tracks that he stepped back to the south rail of track 2, and with the pick still in his hand, stood facing the Santa Fe train, waiting for it to pass so that he could renew his labors, and while so standing, defendant's train came from the east, and without warning struck and killed him."
Assuming that none of these claimed facts are based upon an inference, this theory entirely ignores the testimony of witness Hankenberry and is not based wholly upon the other testimony.
What occurred between the time deceased was last seen by Penson and the time he was seen by the fireman of the Missouri Pacific train, is left to inference in the theory of plaintiff. Hankenberry testified that he saw him during this period of time, as we have stated, supra. It is well settled that where plaintiff's case is based upon an inference or inferences, that the case must fail upon proof of undisputed facts inconsistent with such inferences. [Rashall v. Railroad, 249 Mo. 509; Brown v. Brown, 237 Mo. 662, 668; Burge v. Railroad, 244 Mo. 76, 94.] There is no evidence that deceased dug the hole for the purpose of inserting the anchor between the tie and the track after Penson saw him the last time. But what evidence there is on the subject would seem to show to the contrary. It would appear that deceased did not have time to dig the hole after Hankenberry last saw him. *Page 675 
There was evidence from which the jury could say that the hole was dug Monday morning instead of on the Saturday before, but at what time on Monday morning it was dug is not shown in the testimony. Deceased had been working in the vicinity for over an hour before he was struck. Prior to the time that Penson saw him the last time, no one testified as to what he was doing except Penson, who saw him at one time between 8:15 and shortly after 9:00 o'clock, at which time deceased was carrying anchors. At another place in her brief plaintiff attempts to draw the inference that prior to the time he was last seen by Penson he had no tools with which to dig a hole; that he had been at the tool house to procure the tools and was going back to his work at the time Penson last saw him, but there is no evidence to support any such theory. The tool house was a quarter of a mile away. Penson did not attempt to state where deceased procured the tools that he saw him have in his hands at the time Penson last saw him two or three minutes prior to the collision.
Taking as true the testimony of Hankenberry who saw the deceased between the time Penson last saw him and the time he was seen by the fireman, and the jury under the rule above stated was required to believe it, it would appear that deceased after he was last seen by Penson had gone to the south of track 3 and had left the tools there and had gone about some other work and a few seconds before he was struck returned to procure the tools and carried them in a northeasterly direction to the south rail of track 2. Hankenberry testified that this was where deceased was the last time he saw him. The next that we hear of him is when the fireman saw him standing between the rails of track 2 looking toward the south with a tool in his hands. Hankenberry testified that only a few seconds elapsed between the time he last saw deceased and the time deceased was struck. In those few moments deceased crossed over the south rail of track 2 and turned to the south watching the *Page 676 
Santa Fe train pass. He was not in a position of peril and oblivious thereof until he turned to the south, for the reason that he was walking in a general direction toward the approaching Missouri Pacific train. The rule is well settled in cases of this kind that the operators of an engine are not required to take any steps to avert a possible collision until the pedestrian appears in a place of danger and apparently unconscious thereof. [Witham v. Delano, 184 Mo. App. 677, 682, 683, 684.] As was stated in Evans v. Railroad, 178 Mo. 508, 517 —
"But plaintiff claims that even if deceased was guilty of negligence, yet if defendant's employees in charge of the train became aware of his peril, or might, by the exercise of ordinary care have become aware of it, in time to have enabled them by the exercise of ordinary care to have averted the injury, and they failed to exercise such care, plaintiff was entitled to recover. It will not do to apply this rule in all of its strictness to section men whose business it is to work upon and keep in repair railroad tracks, for they are supposed to look after their own personal safety, and to know of the time at which trains pass, to look for them and see them, and to move out of the way. It is of common knowledge that these men often voluntarily wait until trains get dangerously close to them, and then step out of danger and let them pass by."
It is insisted that there was not room enough for deceased to have stepped between the two tracks in safety. Assuming the truth of the statement and that the train men of the Missouri Pacific did see the movements of deceased coming in their direction at all times after they came onto the straight track, there was no reason why the operators of the train should believe that he would not have continued on across track 2 and thus have avoided the injury. This would have required but the briefest moment, only a step or two. Of course they saw the approaching Santa Fe train and knew that deceased could not stand on track 3; that he either had to retrace *Page 677 
his steps to the south of that track or pass over to the north side of track 2. But, as before stated, there was no reason for them to believe that he would not pass on north into a position of safety. There is no evidence that deceased appeared to be oblivious of the approach of the Missouri Pacific train until he turned to the south. When this was in reference to the position of the approaching train, there is no evidence. Apparently it was only the briefest period of time before the fireman saw him fifty or seventy feet away. Therefore, we cannot say that deceased appeared to be in a position of peril and oblivious thereof until the engine reached a point seventy feet from him, which was too late for the operators of the engine to do anything to avert the collision. The burden was upon plaintiff to show that deceased was seen on the track in a position of peril and oblivious at a distance away sufficient for the operators of the engine to stop the train or give a signal warning in time for it to have been effective. [Hamilton v. Railroad, 250 Mo. 714; Whitesides v. Railroad, 186 Mo. App. 608; Justus v. Railway, 224 S.W. 79; Baecker v. Railroad, 144 S.W. 803.]
The judgment is reversed. All concur.