WILLIAM E. FISHER, *Plaintiff and Respondent*

vs.

DON ROBBINS, JACK BROW, GENE BROW,
*Defendants,*

and

MAX SQUIRES, d/b/a SADDLE ROCK BAR,
*Defendant and Appellant.*

(No. 2769; December 10, 1957; 319 Pac. (2d) 116.)

52

For the defendant and appellant, the cause was submitted upon the brief of Mr. T. C. Daniels, of Casper, Wyoming, and oral argument by Mr. Joseph Garst, of Douglas, Wyoming.

For the plaintiff and respondent, the cause was submitted upon the brief of Murane & Bostwick, and oral argument by Mr. R. R. Bostwick, of Casper, Wyoming.

Heard before Blume, C.J., and Harnsberger and Parker, J.J.

## OPINION

Mr. Justice HARNSBERGER delivered the opinion of this court.

Plaintiff brought suit against the defendants, asking damages for injury received while he was present as a business invitee in a barroom. In a first cause of action, plaintiff alleged that while he was in the Saddle Rock Bar an argument occurred between defendants Don Robbins, Jack Brow and Gene Brow, which continued longer than fifteen to twenty minutes and culminated when Robbins broke a glass beer bottle over the head of either Jack or Gene Brow, and a particle of broken glass lodged in plaintiff's eye, which required the removal of the eye. Plaintiff claimed these actions of Robbins and Brows were negligent and rendered them answerable in damages for the injury plaintiff suffered.

A second and separate cause of action against defendant Max Squires, doing business as the Saddle Rock Bar, alleged Squires to be the owner and operator of the bar, and that he was tending bar at the time of the occurrences recounted in the first cause; that Squires either knew or should have known that the argument or altercation was taking place, but that he failed and neglected to do anything to stop the argument, or remove the participants or protect the plaintiff from the ensuing violence, and that this failure was negligence which rendered Squires answerable in damages for the injury plaintiff received. No service was had upon defendant Robbins. Issue was joined by all the other defendants, and the case was tried to

a jury. Before the matter was submitted to the jury, Gene Brow's motion for a directed verdict as to him was granted, and, at the close of the evidence, on motion of plaintiff, the action against Jack Brow was dismissed. The defendant Squires had also moved for a directed verdict at the close of plaintiff's case, but the motion was denied, and Squires again moved for a directed verdict at the close of all of the evidence. This motion was likewise denied, and the jury rendered a verdict in favor of the plaintiff and against the defendant Squires, awarding him the sum of $6,000 and costs of $60.80. Squires then moved for judgment notwithstanding the verdict, and this, too, was denied. From the adverse judgment entered upon the verdict, the defendant Squires has appealed, alleging the court erred: (1) in overruling his motion for directed verdict made at the close of all of the evidence; (2) in overruling his motion for judgment notwithstanding the verdict; and (3) in entering judgment upon the verdict.

In considering these alleged errors, it is the duty of this court to assume that the evidence of the successful party is true, leaving out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. This has been the unvarying rule of this court and has been followed more than thirty-five times. It needs no citation of authority to justify it. However, in applying that rule in a case of this nature, it must be kept in mind that in order to recover from the appealing defendant, the burden was upon plaintiff to prove: (1) a disturbance occurred which either did or should have attracted defendants' attention; (2) defendant had opportunity to act; (3) defendant permitted the disturbance to continue with-

out reasonable effort to quell the same; (4) defendant failed to give plaintiff reasonable protection; (5) there was some relationship between the disturbance and the subsequent violence; and (6) plaintiff was injured as a result of the violence.

It was not enough merely to prove there was a disturbance and that plaintiff was injured. Proof of defendant's actual or implied knowledge of impending danger to his invitees and that he had reasonable opportunity to avert it was indispensable to entitle plaintiff to a recovery. It was also necessary to show a relationship between the particular disturbance which was relied upon as warning defendant of the impendence of danger to his invitees and the subsequent violence which caused plaintiff's injury.

Our examination of the record discloses that the only evidence of there being any disturbance, prior to the occurrences which took place substantially coincidental with the breaking of the bottle, came solely from plaintiff's own testimony. This testimony is somewhat general and ambiguous and leaves much to surmise in order to connect it with plaintiff's account of the incident which caused the injury.

In order to emphasize the nature of this portion of plaintiff's evidence, it is completely abstracted as follows: The plaintiff said he heard two people in back of him arguing, talking rather loud, angry and hostile; he noticed but did not recognize them when he glanced around; their tones were angry; they came over like they were going out the entrance door; he could not say what they said; there was no physical movement between them and no pushing or shoving; they seemed to argue loud for a while and then they didn't; one called the other a name in a voice louder

than used in argument; one of them hit another with a bottle while they were six or eight feet from him and a piece of it hit plaintiff in the eye; he had never seen the persons involved in this altercation before; the barroom was full at the time; a police officer who was there tried to interfere just before the bottle was thrown; there were just two men talking with the officer; and the officer was taking action to stop the argument by talking to them.

On cross-examination, plaintiff said he did not see either Jack or Gene Brow that night, but remembered seeing the officer and seeing him talk to the two fellows *who were arguing;* he did not see the man wield the bottle or know who wielded the bottle; the only word heard was the "cuss" word before the glass broke; he couldn't say that prior to the time he heard the glass break there was any indication of an active scuffle; he thought the argument should have been stopped and the proprietor should have recognized it as dangerous; he would be running all the time if he ran every time he heard people arguing; he heard the argument but remained where he was; they were going toward the door; the persons at the doorway *were the same* as those he first heard; the officer came in and was talking with them four or five minutes before the bottle was broken; the loud talking was before the officer came in; the only word heard after the officer came in was the "cuss" word; there were quite a few people there and everybody was talking and this was quite a sound; he didn't continually direct his attention from time to time to the argument, but just glanced over there maybe twice and wondered what they were arguing about; he did not see anybody looking up there but imagined they did; and no remarks were made by people sitting by him.

The only other evidence offered by the plaintiff relating to any disturbance was given by the local police officer who was called by plaintiff as a witness in plaintiff's behalf. The officer said he came into the barroom, and while he was standing and talking with Gene and Jack Brow, Don Robbins came up in back of him and used a swear word directed, he believes, at Gene Brow, whose hand then "flew out". When this occurred, the officer said, "Hey, let's not have any of that", and "shot" his hand in front of Gene. Then Jack Brow stepped forward and the officer "grabbed" him and before he "could turn loose of Jack", the bottle came over his shoulder, hit Jack on the head and shattered. The policeman categorically stated that from the time he came into the barroom, there was no argument, no appearance of danger, that Gene Brow was not quarreling, that Robbins was not quarreling with anyone, and there was no quarrel between anyone. He further testified that the first sound or movement that spelled trouble was when the swear words were uttered, and that he acted instantly, but there was nothing he could do to stop the bottle wielder.

After carefully studying the plaintiff's testimony, we believe a fair summary of it is: that plaintiff says he did not see either Jack or Gene Brow in the barroom that night, and did not recognize the people who were arguing; that after the argument died down and the arguing parties went toward the door as though leaving, the police officer came in about that time and talked to the arguing parties; that in a few minutes plaintiff heard a loud "cuss" word, and one of the parties who was talking to the officer hit another with a bottle, and a particle of glass lodged in plaintiff's eye, which eye was later removed. Whether this was the fact or not, and notwithstanding plaintiff's failure to recognize either Jack or Gene Brow that night, the

plaintiff's testimony identifies the two men whose arguing attracted his attention as being Jack and Gene Brow because they were the two men both he and his police officer witness said were the ones the officer was talking with when the bottle was broken. But the plaintiff's testimony does not show that either Jack or Gene Brow precipitated or caused the act of violence which resulted in plaintiff's injury or that the bottle breaking resulted from any disturbance caused by them. The court obviously deemed the evidence insufficient to implicate the defendant Gene Brow and directed a verdict in his favor. The plaintiff was evidently convinced the defendant Jack Brow was not involved in any way in bringing about the violence, because plaintiff voluntarily dismissed his action against Jack. Furthermore, plaintiff says he does not know who wielded the bottle and plaintiff's witness, the police officer, says it was wielded by Don Robbins, who, in view of the testimonies referred to above, was not one of the two men engaged in the argument which attracted plaintiff's attention and which he insists created a danger it was defendant's duty to avert.

Keeping in mind that all evidence which is favorable to the successful party, whether produced by the plaintiff or by the defendant, must be considered on motions for directed verdict and for judgment non obstante veridicto, it may be worth while to also summarize the testimonies given by the defendants when they were called for cross-examination by the plaintiff, as well as testimony of other witnesses called in the defendant's behalf, so that anything thus elicited which might support the verdict may be considered.

On such cross-examination the defendants testified as follows:

Defendant Squires said he had served Robbins in a booth across from the bar where Robbins was sitting with a woman about five or ten minutes before the trouble; that Jack and Gene Brow and the officer were at the bar; he did not see Robbins with either Jack or Gene and did not hear him make any remark; and at the time of the incident he first saw Robbins when he jumped in the air coming toward Jack.

Jack Brow recalled no argument with Robbins, although he said he would have recalled it if there had been an argument.

Gene Brow was in the barroom looking for Jack and saw him walking toward the front of the building with Robbins whom he had never seen before. Robbins went to a booth and Jack came to the bar where Gene talked with Jack and the officer for probably three minutes when Robbins came up in back of Gene, addressed him and shoved him. Gene shoved Robbins and he stumbled away while Gene turned his back on him. Gene never saw Robbins again nor did he see his brother Jack struck with the bottle, but the bottle came from behind him and he saw the glass fly. Robbins had made no loud remark except when he addressed Gene, and when Jack and Robbins were together they were not arguing and there was nothing to indicate any trouble between them. It was three or four minutes after Jack and Robbins separated before Jack was struck with the bottle.

In testifying for the defendant, a bartender witness said there was no argument or disturbance between Jack and Robbins. He heard a thump, feet shuffling and the officer say "hey there" and saw him push Jack and Gene against the bar. Robbins jumped up and hit one of them with a bottle. Jack and Gene

were facing the bar with the officer between them facing the bar. He heard no loud voices and observed no disorderliness, anger, or quarrelsomeness until the bottle-breaking incident. He saw Robbins get out of the booth, walk over to where Jack, Gene and the officer were standing, but did not observe any violence or anger in Robbins' bearing.

Another witness never noticed anything out of order before the incident; there were loud voices and they were noisy, but there was no quarreling; he saw Robbins in a booth but Jack was not with him; he saw Robbins walk over to where Jack, Gene and the officer were standing; Robbins was carrying a bottle by the neck; saw Robbins on the floor twelve or fifteen feet away and saw Robbins jump up, run in and throw the bottle.

A further witness saw Jack talking to the officer before the incident at the bar and saw Robbins with some woman in a booth across from the bar. Robbins got up casually and walked across the floor. He had a beer in his left hand like he was going to drink it. He turned back toward the bar and talked to the officer who was facing Jack, and Robbins brought his hand up like he was going to use the bottle. Jack was not at the booth at any time.

Three other witnesses said there was no sign of quarrel or argument between Jack and anyone.

While the verdict rendered implies a finding that defendant should have been alerted to danger by the loud, violent and angry argument about which plaintiff testified, and that defendant should have acted to forestall an impending peril to his invitees, it was necessary that there be some substantial evidence to

support such a finding, and it was also incumbent upon plaintiff to show some casual connection or relationship between that argument and the action which resulted in plaintiff's subsequent injury. See 65 C.J.S. Negligence, § 251, p. 1119, n. 18. The absence of such proof is fatal.

Plaintiff's *evidence* does not show the argument which his testimony referred to caused or inspired in any way the violence which resulted in his injury, and we do not consider it is a reasonable inference that when people become angry and argue violently with each other that such disagreement portends they will break bottles over each other's heads or otherwise resort to unlawful assaults and batteries. A mere battle of words, no matter how violent, unaccompanied by action, threat of action or some type of demonstration which gives warning that violence is impending, usually causes no concern of those present, any more than it seemed to have alarmed the plaintiff. We might also say that although plaintiff said the argument should have warned the proprietor of the imminence of danger, that statement was merely plaintiff's own conclusion. This invaded the province of the jury, as that was one of the questions the jury was called upon to decide in arriving at a verdict. It was not competent evidence having probative force and it cannot be considered even though it was elicited during defendant's examination of the plaintiff. See Knudson v. Knudson, 382 Ill. 492, 46 N.E.2d 1011, 1015; Day v. Barber-Colman Company, 10 Ill.App.2d 494, 135 N.E.2d 231, 235. We must, therefore, hold that, although we give credence to all the competent evidence which is most favorable to the plaintiff and fortify it with every favorable inference which we may reasonably give to it, the evidence was insufficient to justify the conclusion that the argument fore-

shadowed such a danger to plaintiff as required defendant to take some action to protect him.

In West v. Detroit Terminal R. R., 229 Mich. 590, 201 N.W. 955, 958, the court discusses and distinguishes other cases dealing with liability arising under a variety of circumstances and in many of which there were dissenting opinions, but which were, nevertheless, cited in opposition to its own conclusions and in doing so says:

" 'The fact that there were dissenting opinions in many of the cases indicates that it is not always easy to discern the applicable principle, or how to apply the principle, and that a difference of facts is of prime importance. Each case has turned largely on its own peculiar circumstances. Nevertheless, running through the whole line of decisions, there is a recognition of general rules, the difference of opinion arising from whether the particular case falls within the rule or within an exception or modification of it. It seems, therefore, that the logical manner of approach to the consideration of the case at bar is from the discovery and application of the rule to the application of exceptions to the rule.' "

This statement stresses the importance of the factual situation. In this case, it is crucial whether, as a matter of law, the evidence was sufficient to justify a finding that the argument, about which plaintiff testified, placed a duty upon defendant to protect plaintiff from the violence which caused plaintiff's injury. In 38 Am.Jur. Negligence, § 103, pp. 763, 764, 765, it is explained that when an injury occurs on the premises as a result of negligence of a third party, no liability attaches to the owner or operator unless the circumstances can be predicated on the theory of the existence of a public nuisance or a dangerous condition known to the owner or occupant,

which he failed to take reasonable precautions to alleviate. This is undoubtedly a correct statement of the general rule. In addition, however, it was also said in the same section: "As stated by some authorities, an independent act by a third person causing injury to a customer is something which a proprietor is not generally bound to anticipate, *especially where the independent act is a wilful one.*" (Emphasis supplied.) See Annotation, 100 A.L.R. 717. An examination of a few cases illustrates the type of circumstances which have caused some courts to uphold the findings of juries which held those in charge of establishments responsible for injuries inflicted upon its invitees by another.

In Fortier v. Hiberian Bldg Ass'n of Boston Highlands, 315 Mass. 466, 53 N.E.2d 110, for a considerable period of time, boys aged fourteen or fifteen years were running wild "like Indians" in the lobby of a building, pushing each other and also other people upstairs and down and injuring plaintiff. On appeal from a directed verdict for defendant, the court reversed, saying it was defendant's duty to keep the lobby in a reasonably safe condition.

In McFadden v. Bancroft Hotel Corporation, 313 Mass. 56, 46 N.E.2d 573, 575, a guest was assaulted in a hotel. Verdict was for the plaintiff, and appeal taken from denial of defendant's motion for directed verdict.

The assailant had been observed by defendant's assistant manager, and evidence showed that over a considerable period of time assailant was abusive and insulting to a number of guests present, had abused and actually assaulted some of them, but had been prevented from a battery before he assaulted the plaintiff.

Notwithstanding this vicious conduct of the assailant, the court in affirming stated:

"* * * The case is not too strong on the question of the defendant's negligence, but we cannot say that, as matter of law, there was no evidence to take the case to the jury on this point. * * *"

In Greco v. Sumner Tavern, Inc., 333 Mass. 144, 128 N.E.2d 788, where a customer had become a nuisance due to protracted drinking, and together with his group, began antagonizing other people who were present by fooling around, howling, being quite boisterous, and then assaulting the plaintiff, judgment was for the plaintiff and was affirmed.

In Rawson v. Massachusetts Operating Co., Inc., 328 Mass. 558, 105 N.E.2d 220, 221, 29 A.L.R. 2d 907, the jury returned a verdict for the plaintiff, but the judge entered a verdict for the defendant. On review the supreme court reversed and directed that the verdict of the jury was to stand.

In this case, the assailant and others were very boisterous, for about forty-five minutes, and talked so loudly the audience yelled to them to be quiet. While the assailant and his associates were talking, laughing, yelling, throwing popcorn, and indulging in rowdyism, a struggle took place between them, and when plaintiff protested to the assailant, he was struck in the face and injured.

The court said that having in mind the facts as outlined, the "majority felt the jury could find the defendant was remiss during one hour and one half in failing to discover and stop the disorder." However, the court also stated: "Cases of this sort present a

wide variation in their facts", and cited cases where various holdings had been made.

In Pfeifer v. Standard Gateway Theater, 259 Wis. 333, 48 N.W.2d 505, 507, plaintiff was injured by being struck with a spitball while in the theater. The evidence showed that boys had been throwing things about the theater. The court said there was evidence to show how long the conduct of the boys had continued, and that such conduct should have attracted the attention of the attendants, although it did not say how long that time was, but contented itself by saying that the testimony was sufficient to make an issue as to whether the defendant had violated the rule and quoted from an earlier case the following:

"The obligation of those who collect numbers of people in one place, for gain and profit, to be vigilant in their efforts to protect such people, has long been recognized. * * *"

" 'When one assembles a crowd or a large number of people upon his property for purposes of financial gain to himself he assumes the responsibility of "using all reasonable care to protect the individuals from injury from causes reasonably to be anticipated." ' "

We consider these cases fairly represent the type of circumstances which have impelled many courts to hold that as a matter of law the evidence in the case before them was sufficient to go to the jury. In each of them it is difficult to see how the management could have failed to sense that a danger was impending to its patrons, and the disturbances had direct relation to the injury. In contrast, however, is the holding in Rich v. Boston Elevated Ry. Co., 316 Mass. 615, 55 N.E.2d 953, 954, 955. In that case, the plaintiff herself was the only one to testify in her own behalf.

She said that while standing on the loading platform of the defendant's elevated railway, it was crowded, children were playing tag, shouting, running, making considerable noise, darting in and out of the crowd, and they ran into her, knocking her down and causing her injury.

A ruling favorable to defendant was upheld, and plaintiff's exceptions to it overruled, the court saying:

"* * * The testimony was undisputed and taken at its most favorable aspect to the plaintiff would not warrant a finding that the defendant failed in any duty owed the plaintiff either by reason of not anticipating and guarding against such an occurrence or by reason of failure to discover these two particular boys [who knocked plaintiff down] and to stop this one particular game. * * *"

The court also made this further comment:

"* * * The defendant 'is not obliged to foresee the impossible or highly improbable, and it is not called upon under ordinary circumstances to expect that one passenger will assault another; or that because one passenger is engaged in frolic or sport with another, such conduct will result in injury to one of them.' * * *"

After noting that the defendant was not an insurer of its passengers, the court concluded:

"* * * Hence it cannot be held responsible for manifestations of lawlessness, heedlessness, impetuosity or force which a high degree of prevision and sagacity could not reasonably be expected to forestall. Injury arising from the sporadic act of an individual or the aggregated impulses of a throng, if outside the limits of conduct reasonably to be apprehended by one under a strong legal duty to be most keenly sensitive to guard

against preventable wrongs, affords no ground of liability. * * *"

Is is unnecessary to cite the numerous other cases where the evidence has been held to be insufficient to submit to the jury, for in all such cases the decision of the reviewing court hinged upon its own determination as to nature of the circumstances being such as to apprise the owner or management that a hazardous condition existed which called for action to safeguard the patrons or invitees from a hazard created by some improper conduct which had direct relation to the injuring occurrence.

From what has already been recounted, it should be evident that plaintiff's testimony was very general, and, in fact, somewhat vague in identifying the persons to whom he was referring when he told about the loud argument which he heard in back of him and those about whom he was speaking when he testified about the bottle-breaking incident. It is only by inference that the persons referred to as "they" and "them", when talking about the argument, can be identified as the same "they" and "them" who, he said, were implicated in the bottle-breaking incident. An example of plaintiff's confused testimony occurred when, on direct examination, he said, "Well, these fellows were arguing, and one of them hit another with a bottle, and a piece of it hit me in the eye", but on cross-examination these questions were asked and his answers given:

"Q And you don't know who wielded the bottle or how it happened?

"A I naturally surmised that one of these —

"Q I'm not asking you to surmise. I am asking you for what you saw, Mr. Fisher.

"A No, I didn't see them."

Again, if, as plaintiff testified, he glanced at the participants in the argument and failed to recognize them, and did not see either Jack or Gene Brow in the barroom that evening, it would seem he was then testifying in effect that it was neither Jack nor Gene Brow who engaged in that argument. Yet later his further testimony, coupled with that of the police officer, identifies Jack and Gene as the arguing parties and does not include in that argument Don Robbins, who wielded the bottle.

Even conceding that under some circumstances it might be of little importance whether those engaged in an argument were the same persons who became involved in later violence, in this case if it were not shown that the later violence was connected with, precipitated by or resulted in some manner from an earlier manifestation of danger, it cannot be said the injury occurred because of defendant's negligence in failing to suppress the trouble or avert the danger indicated by that manifestation. The hazard which required defendant's action must be shown to be the same danger which resulted in plaintiff's injury. No matter how ominous a condition or a situation becomes, if it is not the forerunner of acts which cause plaintiff injury, it cannot be made the basis for his recovery from the person responsible for the danger or for permitting it to persist. In this case that simply means the argument must be shown to have been a proximate cause of plaintiff's injury. Neither the evidence produced by the plaintiff nor any other evidence in the case shows the argument was such a proximate cause.

We also recall plaintiff's testimony that the argument was loud and then it was not . This seems to indicate that whatever argument there had been was ended. Coupled with plaintiff's further statement that the quarreling parties went toward the door as though they were leaving this rather fortifies the impression that any danger there may have been had abated. We are not forgetting that the jury's verdict carries with it the necessary findings to support it, and this would mean that they also found the argument had not ceased . These references to plaintiff's testimony do, however, illustrate to some extent its uncertain and, at times, contradictory character. So it is that this general and indefinite evidence of the plaintiff concerning the argument requires considerable inference to supplement it in order to justify a finding that there was continuity and relationship between the argument and the act of violence which injured plaintiff.

In contrast to plaintiff's testimony is the testimony given in plaintiff's behalf by his police officer witness with respect to the situation. His testimony was direct and unequivocal. So far as any positive evidence shows, the violence was not an outgrowth of the argument about which plaintiff testified. From the time the officer appeared upon the scene until the harmful incident occurred, some time must have elapsed, as the officer said he was talking to Jack and Gene Brow and plaintiff's final testimony indicated that the elapsed time may have been as much as four or five minutes, although other witnesses fixed that time as three or four minutes. The policeman's testimony shows there was no argument or quarrel between anyone during that time. The first indication of trouble was when the swear words were uttered. This was followed almost instantly by the bottle breaking

which caused injury to the plaintiff, and the police officer said there was no time between the first indication of trouble and bottle wielding for him to do anything to stop the bottle wielder. Under such circumstances, the words of the court in Fulfer v. Sherry's Liquor Stores, Cal.App., 149 P.2d 734, 736, 737, where judgment for defendant was examined, may well be adopted here with minor changes: "In the instant case the attack on plaintiff was almost instantaneous * * *" "The assault followed this movement immediately so there was no opportunity for any warning." "A defendant cannot be held liable where the acts resulting in the injury of a plaintiff would not have been foreseen by a reasonably prudent person." "We fail to see how a reasonably prudent person could have anticipated or foreseen the unwarranted and unlawful attack on plaintiff * * *".

Although we must accept as completely true all of the testimony given by the plaintiff, together with such inferences as might reasonably be drawn therefrom, it is improper to enlarge that evidence by inferences which must be based upon that portion of it which is vague, equivocal and general testimony, especially if such inference would be in direct conflict with positive and clear testimony given by plaintiff's own witness. See 49 C.J.S. Judgments, § 60 (c) (4), pp. 166-170. The principle involved is pointedly stated in West v. Detroit Terminal R. R., 229 Mich. 590, 201 N.W. 955, 958, a case where a judgment for the defendant notwithstanding the verdict was affirmed, the court saying:

" 'In setting out the above facts, the testimony most favorable to the plaintiff has been adopted. However, in view of the argument, it may properly be noted that while the plaintiff, upon this motion, is entitled to the benefit of such testimony, and to the force of

the reasonable inferences to be drawn therefrom in her favor, she, having the burden of proof, is not entitled to favoring inferences from a lack of testimony nor from broad general statements when opposed by definite evidence from her own witnesses.' "

There is a host of authority to support this principle, a few of which are: Russell v. Scharfe, 76 Ind.App. 191, 130 N.E. 437, 439; Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511, 513 ;Stines v. Dillman, Mo.App., 4 S.W.2d 477, 478; George v. Missouri Pac. R. Co., 213 Mo.App. 668, 251 S.W. 729, 732; Huddy v. Chronicle Pub. Co., 15 Cal.2d 554, 103 P.2d 421; Cal.App. 94 P.2d 56, 57; Curcic v. Nelson Display Co., 19 Cal.App. 2d 46, 64 P.2d 1153, 1158; Giannini v. Southern Pac. Co., 98 Cal.App. 126, 276 P. 618, 622; Raw v. Maddox, 230 Mo.App. 515, 93 S.W.2d 282, 284; Equitable Life Assur. Soc. of U. S. v. Welch, 239 Ala. 453, 195 So. 554, 559; Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819, 825. That exception to the general rule is controlling here.

This is not a case where the jury's choice in favor of the successful party could be based upon plaintiff's evidence as against that of the unsuccessful party. Nor is it a case where the jury made a choice between directly conflicting testimonies given by different witnesses in plaintiff's behalf, in which case its acceptance of the testimony most favorable to the successful party would not be disturbed. Even where there is conflict between plaintiff's testimony and testimony of plaintiff's witness, the jury's acceptance of plaintiff's testimony would be controlling. But where, as here, there are merely inferences from plaintiff's general statements which conflict with positive testimony from plaintiff's own witness, neither the court nor the jury was at liberty to consider and accept such inferences and disregard the direct testimony of plaintiff's

own witness for whose credibility the plaintiff himself is deemed to have vouched.

Although plaintiff first said his officer witness was present only seconds before the bottle was broken, on cross-examination he qualified that statement so as to leave it open to doubt but that his final testimony was that the officer was there four or five minutes before the violence. In any event, the officer said positively that it was two to three minutes after he was talking to Jack Brow before Robbins came over to where he was and there was no argument or quarrel between anyone while he was there that he was talking with Jack and Gene Brow, and that not even the person who later wielded the bottle was arguing or quarreling. He also testified the first indication of trouble was a swear word directed at Gene Brow, followed almost immediately by the bottle breaking, and this all happened without time for any interference. The only way this evidence could be construed to be in conflict with that of the plaintiff, so as to warrant its being disregarded, is to enlarge plaintiff's very general statements by inferences implying the early argument, which had seemingly ended with the argument subsiding and its participants moving to the entrance as though leaving, was suddenly activated into violence by a person, who must also be inferred to be one of the parties who had been arguing in the first instance and who was also standing with the officer, while he was talking to the assaulted party. Such inferences would, of course, contradict the officer who swore he was talking to Jack and Gene Brow, not with Don Robbins, and that the assailant had not been arguing or quarreling with anyone while he, the officer, was there. The plaintiff's testimony falls far short of stating that either Jack or Gene Brow ever engaged in any argument or altercation with Don Robbins, the assailant.

It falls far short of showing that an argument of dangerous proportions commenced and continued for a period of from fifteen to twenty minutes, or that it in any way precipitated the assault which caused plaintiff injury. The evidence shows it was Don Robbins who wielded the bottle, but plaintiff's testimony falls far short of showing the argument had anything to do with or had any relationship whatsoever to Robbins' cursing Gene Brow or with Robbins' assaulting Jack Brow.

Under these circumstances, plaintiff was left entirely without proof that the argument was connected with or related to the shattering of the bottle, and, therefore, the evidence was insufficient to support a finding that failure to suppress the argument was a proximate cause of the injury.

There was also a complete absence of proof that defendant had any opportunity to protect plaintiff from suffering the grievous injury he received. The short time between the swear word which gave first indication trouble was brewing and the ensuing violence speaks for itself, and leave no room for differences of opinion as to the defendant having any opportunity to act.

Two cogent observations are made in Heps v. Burdine's Inc., Fla., 69 So.2d 340, 341, 342, which are apropos here: "For every wrong there is a remedy, is one of the first principles of hornbook law that confronts the law student, but with it is the equally important principle that the remedy be sought against the negligent party." "The mere fact that one is injured in a public place is not enough to fix responsibility for a cause of action. The person injured must

point out and bring his action against the one who caused the injury."

We do not intend that anything which we have said should be considered as placing us in disagreement with the many well-considered statements from reputable authorities as to the high degree of care which must be exercised by those maintaining places for public patronage, and especially for that class of establishments where experience has shown disturbances of more or less violent character are more likely to occur. This is, of course, particularly true with respect to barrooms and other similar places where intoxicating liquors are consumed, for it is common knowledge that the use of intoxicants frequently unduly excites the tempers, emotions and actions of those who indulge in them.

In 30 Am.Jur. Intoxicating Liquors, § 609, pp. 574, 575, it is said in part:

"* * * while the proprietor of a place dispensing intoxicating liquors is not an insurer of the safety of his guests, he does owe them the duty of exercising reasonable care to protect them from injury at the hands of a fellow guest. * * * a guest or patron of such a place has a right to rely on the belief that he is in an orderly house and that its operator personally or by his delegated representative, is exercising reasonable care to the end that the doings in the house shall be orderly. * * *"

In a similar vein the court in Tyrrell v. Quigley, 186 Misc. 972, 60 N.Y.S.2d 821, 822, said:

"* * * the owner of a public place has a 'duty to police the premises' and to furnish a sufficient number of servants to afford reasonable protection 'if the place is one or the character of the business is such' that the

owner should anticipate the presence thereon of disorderly persons generally or at any particular time."

Perhaps as clear a statement as we have come across which expresses our view is that of the court in Reilly v. 180 Club, Inc. 14 N.J.Super, 420, 82 A.2d 210, 212: "While the standard of care is that of an ordinarily prudent person, yet it must be realized that reasonable care is a relative term in that the degree of care must be commensurate with the risks and dangers attending the activity being pursued. It is a subject of common knowledge that the consumption of a procession of drinks of intoxicating liquors produces a variety of reactions in the deportment of human beings, the development of which emotions the tavern-keeper should be reasonably alert to detect."

But also see Sidebottom v. Aubrey, 267 Ky. 45, 101 S.W.2d 212.

Our full accord with the statement last quoted has prompted us to read and reread, to study and restudy, every word of testimony that was given in this case in an effort to discover if there was any evidence which showed the violence which caused plaintiff's injury stemmed from the argument which plaintiff said should have alerted the defendant to that danger. In this we have been unsuccessful, and it leaves no other conclusion but that the motion for a directed verdict in the defendant's behalf should have been granted.

The plaintiff has suffered a terrible injury in the loss of one of his eyes. This naturally arouses everyone's sympathy and every impulse is to lean as far as is possible in trying to afford him some relief. But those to whom is given the administration of Justice must not be blind to the injustice of penalizing one who is not shown to be responsible for the injury in an effort to ameliorate the loss of one who has been

hurt by a third party. The loss of money to pay the judgment rendered may not be so great a loss to the defendant as is plaintiff's loss of his eye, but it would be as much a legal wrong to require such a payment to be made and it was a legal error to submit this case to a jury upon the evidence shown by the record and permit them to sympathetically speculate as to what verdict it should render.

So we must conclude (1) that the evidence is at least of doubtful sufficiency to justify a finding that there was an argument which charged defendant with knowledge that peril to his patrons was impending and fixed upon him a duty to act in protection of his invitees, (2) that the evidence was insufficient to connect the argument with the violence that resulted in plaintiff's injury, and (3) that there was no evidence to show defendant's opportunity to prevent plaintiff's injury. The judgment of the lower court is, therefore, reversed with direction to enter judgment in favor of the defendant and against the plaintiff.

Reversed.