2006 WY 160

**Christopher RADER, Appellant (Plaintiff),**

v.

**SUGARLAND ENTERPRISES, INC., a Wyoming corporation, d/b/a Holiday Inn, Appellee (Defendant).**

**No. 06–20.**

Supreme Court of Wyoming.

Dec. 28, 2006.

Representing Appellant: J. Douglas McCalla and Tyson E. Logan of The Spence Law Firm, LLC, Jackson, Wyoming. Argument by Mr. Logan.

Representing Appellee: Timothy W. Miller of Casper, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, and BURKE, JJ., and BROOKS, D.J.

BROOKS, District Judge.

[¶ 1] Appellant, Christopher Rader (Rader), a bar patron, filed a complaint for negligence against Appellee, Sugarland Enterprises, Inc. (Sugarland), a bar owner, to recover for damages sustained in a fight with other bar patrons. Rader appeals the district court's entry of summary judgment against him, which found that under the undisputed facts of the case, Sugarland owed no duty of care to Rader.

[¶ 2] We affirm.

## ISSUE

[¶ 3] The parties agree that the controlling issue on appeal is whether Sugarland owed a legal duty to Rader under the specific factual circumstances of this case.

## FACTS

[¶ 4] On the evening of March 17, 2001, Rader, his wife Rebecca, their friends, Steve and Shannon Kuzara and Tanya Stringer, entered Scooters Bar & Grill at the Holiday Inn in Sheridan, Wyoming. The Holiday Inn is owned and operated by Sugarland. Rader recognized a friend in the bar and began talking to him. Rebecca Rader, the Kuzaras, and Stringer went to the dance floor to dance.

[¶ 5] An argument occurred on the dance floor between Ms. Stringer and another lady,

Mindy Lyle. Jessica Taylor then came down on the dance floor and approached Ms. Rader in an aggressive manner and Ms. Rader held her hands out to defend herself. Mr. Kuzara stepped between Ms. Taylor and Ms. Rader. The bar disc jockey observed the commotion and called for security on the public address system. Mr. Rader heard his wife calling his name and turned toward the dance floor. He saw a man grab his wife and Rader went to the dance floor and pushed that man away from his wife. The bartender then came down to the dance floor and told those involved to leave.

[¶ 6] Two people who were not involved inside the bar were Jerome Taylor, Ms. Taylor's husband, and Danny Sutherland. Rader had no contact with either Mr. Sutherland or Mr. Taylor inside the bar. Neither Mr. Taylor nor Mr. Sutherland did anything in the bar to warrant their removal, and the record does not appear to indicate they were asked to leave. The bartender did, however, note that Sutherland was intoxicated when he entered the bar, that he had a belligerent look on his face, and the bartender refused to serve Sutherland any alcohol.

[¶ 7] The Raders, the Kuzaras, and Ms. Stringer also left at the request of the bartender. Before he left, Rader found the man he had pushed on the dance floor and apologized. That person had apparently just been trying to stop the argument. It is clear that when Ms. Taylor and Ms. Lyle were asked to leave the bar, Mr. Taylor and Mr. Sutherland also left the premises. The Raders walked out of the bar through a patio and into the parking lot. Mr. Rader was not expecting any trouble as he left the bar. Mr. Taylor and Mr. Sutherland walked past the Raders. Rader had not seen either man inside the bar and had never seen Sutherland in his life.

[¶ 8] Ms. Taylor and Ms. Stringer again started arguing outside. Mr. Taylor, after he had walked past the Raders, called out to Rader, "That's my wife." Rader then pointed to Ms. Rader, who was standing next to him, and said, "So, that's my wife," indicating that the person arguing with Ms. Taylor had no relation to Mr. Rader. Rader turned away from Mr. Taylor. Mr. Taylor and Mr. Sutherland then immediately attacked Rader

and beat him severely causing a significant head injury. A bar employee came outside and stated that the police were coming and Taylor and Sutherland fled the scene. Rader testified in his deposition that the assault on him was a complete surprise. Rader also stated that prior to the assault, there was no hostility between he and Taylor or Sutherland.

[¶ 9] Rader filed suit against Sugarland alleging, in essence, that Sugarland failed to exercise reasonable care to protect him in light of a known and pending danger that arose on the bar premises. Sugarland, after some discovery, filed a motion for summary judgment. Rader responded and the district court granted the motion, finding that under the undisputed facts of the case, Sugarland owed no duty of care to Rader to prevent the assault.

## STANDARD OF REVIEW

[¶ 10] Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Easum v. Miller*, 2004 WY 73, ¶ 15, 92 P.3d 794, 798–99 (Wyo.2004). In reviewing a summary judgment, we do not accord any deference to the district court's decisions on issues of law, and examine *de novo* the entire record—the parties' submissions of evidence—in a light most favorable to the party who opposes the motion. *Id.* at 799.

## DISCUSSION

[¶ 11] All negligence actions consist of the breach of a duty owed by the defendant which proximately causes injury to the plaintiff. *White v. HA, Inc.*, 782 P.2d 1125, 1128 (Wyo.1989). Our focus is whether Sugarland owed or breached any duty to Rader in this case. This Court has considered on four previous occasions the question whether a bar owner owes a duty to a patron as a result of an altercation on or near the bar premises.

[¶ 12] In *Fisher v. Robbins,* 78 Wyo. 50, 319 P.2d 116, 117 (1957), an argument developed between two bar patrons. A police officer entered the bar and began talking to the two patrons. A third person approached them and broke a beer bottle over the head of one of the patrons who was talking to the policeman. A piece of glass from the bottle flew into the eye of yet another bar patron resulting in the loss of the eye.

[¶ 13] This Court reversed a jury verdict in favor of the plaintiff. The Court set forth a six-part burden of proof requirement that the plaintiff had to meet in order to prevail against the bar owner. That burden of proof requirement consisted of:

(1) a disturbance occurred which either did or should have attracted the defendant's attention;

(2) defendant had opportunity to act;

(3) defendant permitted the disturbance to continue without reasonable effort to quell the same;

(4) defendant failed to give plaintiff reasonable protection;

(5) there was some relationship between the disturbance and the subsequent violence; and

(6) plaintiff was injured as a result of the violence.

*Fisher,* 319 P.2d at 118.

[¶ 14] In *Fisher,* this Court found that the plaintiff's evidence did not prove that the original argument caused or inspired the violence which injured the plaintiff or that the bar owner had any opportunity to protect the plaintiff. *Fisher,* 319 P.2d at 126. We went on to hold that a mere battle of words, no matter how violent, unaccompanied by action that gives warning that violence is impending, is not enough to create a duty on the part of the bar owner. *Id.* at 120.

[¶ 15] We next considered a bar owner's responsibility to patrons in *Mayflower Restaurant Co. v. Griego,* 741 P.2d 1106 (Wyo. 1987). There, we affirmed a jury verdict in favor of the plaintiff. In *Mayflower,* the plaintiff was threatened several times by another bar patron, who at one point grabbed the plaintiff's shirt. Later, the plaintiff was involved in another altercation in the bar

with the same bar patron, resulting in injury to the plaintiff. We reiterated in *Mayflower* that a battle of words does not predict that a participant will resort to an unlawful assault and battery. However, the evidence indicated that the plaintiff had been grabbed by the bar patron during the initial confrontation and that the altercation was such that it attracted the attention of bar employees. The evidence also indicated that the initial disturbance was connected to the subsequent assault. Therefore, this Court concluded that there was sufficient evidence to affirm the jury verdict. *Id.* at 1113–14.

[¶ 16] This Court again addressed the issue in *White v. HA, Inc.,* 782 P.2d 1125 (Wyo.1989). *White* has some similarity to the case now before this Court. In *White,* the plaintiff was a patron in the defendant's bar. One of the plaintiff's friends and another bar patron got into a fight in the bar. The plaintiff and his friend left the bar after the fight. Shortly afterward, the fight resumed outside the bar premises between the plaintiff's friend and the other party to the bar fight. The plaintiff became involved and ultimately sustained a gunshot wound. This Court affirmed a summary judgment in favor of the bar. We noted that the original altercation in the bar was brief and that the bar patron who shot the plaintiff voluntarily left the bar. The plaintiff and that patron did not talk to each other in the bar or demonstrate any aggressive behavior towards each other in the bar. We held that "[w]ithout sufficient notice of impending danger, no duty arose" to protect the plaintiff. *Id.* at 1131.

[¶ 17] Our most recent discussion of this issue occurred in *Hanna v. Cloud 9,* 889 P.2d 529 (Wyo.1995). In *Hanna,* we again affirmed a summary judgment in favor of the bar owner. The plaintiff was an employee of the defendant bar, which adjoined a restaurant and coffee shop. The plaintiff had several physical confrontations with two other people in the kitchen of the restaurant. After going home, the plaintiff later returned and was injured in yet another confrontation in the bar. This Court concluded that under the facts of that case, the bar owner had no opportunity to intervene and therefore sum-

mary judgment was proper. *Id.* at 530. In reaching that conclusion, we synthesized our previous rulings by setting forth a three-pronged burden of proof in order for a plaintiff to establish liability against a bar owner:

- a disturbance which did attract or should have attracted the tavern keeper's attention;
- the lapse of a reasonable amount of time between the attracting disturbance and the subsequent tortious act on the injured invitee by the other invitee, within which time period the tavern keeper had the opportunity to avert the impending danger or subsequent tortious act; and
- a relationship between the attracting disturbance and the subsequent tortious act.

*Id.* at 532.

[¶ 18] Our analysis of the present case begins with what we said in *Fisher.* The disturbance, in order to attract the attention of the bar owner, must be more than a battle of words. It must be action, threats of action, or some type of demonstration. *Fisher,* 319 P.2d at 120; and *White,* 782 P.2d at 1129. At the heart of the cause of action is notice and foreseeability of some impending danger to a business invitee and the ability to avert the danger. Bars and taverns, by their very nature, involve alcohol, loud animated conversations, and spontaneous actions and reactions to normally innocuous words and events. Given those realities, we have been reluctant to and decline now to broaden tavern owner liability beyond what we have said in *Hanna* or *White. White,* 782 P.2d at 1128. "[T]he duty to protect a third party from danger, above and beyond the general landowner duty to provide reasonably safe premises to all invitees, arises when the disturbance in the bar is sufficient to alert the tavern keeper that there is imminent danger of injury to a third party." *Id.* at 1129. "Proof of defendant's actual or implied knowledge of impending danger to his invitees and that he had reasonable opportunity to avert [that danger] is indispensable to entitle plaintiff to recovery." *Id.* at 1131.

[¶ 19] Turning to the three-part burden of proof test set forth in *Hanna,* we conclude that the plaintiff's evidence fails on each part of that test. Here, the disturbance at issue was the dance floor argument that involved some minimal amount of touching between Ms. Stringer, Ms. Lyle, Ms. Taylor, and Ms. Rader. Mr. Taylor and Mr. Sutherland played no part in that disturbance. Mr. Rader had some limited involvement, but it is clear that the real disturbance involved the four ladies. Mr. Taylor and Mr. Sutherland did nothing to warrant their removal from the bar, and it is not clear from the record that they were asked to leave. The record is absolutely clear that Rader, on the one hand, and Taylor and Sutherland on the other, had no contact in the bar and certainly there was no confrontation between them in the bar.

[¶ 20] Part one of the *Hanna* test requires a disturbance that attracted the attention of the tavern keeper. There was a disturbance that did attract the disc jockey's attention, but it did not involve Taylor or Sutherland, nor did the disturbance involve threats against Rader. There is simply nothing to indicate that the disturbance would pose a threat to Rader from Taylor and Sutherland.

[¶ 21] Part two of the *Hanna* test requires that the tavern owner have a reasonable amount of time to avert the impending danger. Here, there is no proof of impending danger from Taylor and Sutherland. There was nothing from which Sugarland could foresee that the argument among the ladies on the dance floor would lead to the Taylor and Sutherland attack on Rader.

[¶ 22] Finally, *Hanna* requires a relationship between the disturbance and the subsequent tortious act. Sutherland and Taylor had no part in the disturbance and had no *a* contact whatsoever with Rader in the bar. The nexus between the disturbance and the subsequent attack is missing.

[¶ 23] Rader points to a brief excerpt of this Court's opinion in *Fisher,* where we said, "[E]ven conceding that under some circumstances it might be of little importance whether those engaged in an argument were the same persons who became involved in later violence...." *Fisher,* 319 P.2d at 123. Rader argues, therefore, that Sutherland and Taylor did not have to be part of the original disturbance to alert the bar owner.

[¶ 24]  Certainly one could hypothesize a scenario where the subsequent combatants were not direct participants in the earlier disturbance and yet the bar owner would be liable; however, we also said in *Fisher* that

> if it were not shown that the later violence was connected with, precipitated by or resulted in some manner from an earlier manifestation of danger, it cannot be said the injury occurred because of defendant's negligence in failing to suppress the trouble or avert the danger indicated by that manifestation. The hazard which required defendant's action must be shown to be the same danger which resulted in plaintiff's injury.  No matter how ominous a condition or a situation becomes, if it is not the forerunner of acts which cause plaintiff injury, it cannot be made the basis for his recovery....

*Fisher*, 319 P.2d at 123–24.

[¶ 25]  In this case, the connection between the argument involving the four ladies and the subsequent attack by Sutherland and Taylor is too tenuous to impose a duty upon Sugarland to anticipate that such an attack would occur.  The sophistry of Rader's argument is best illustrated by Rader himself.  In his deposition testimony, he states that the attack by Taylor and Sutherland came as a complete surprise.  He further testified that there was no prior hostility between he and Taylor and Sutherland.  Nevertheless, Rader asserts that despite his own inability to predict the assault, Sugarland should have anticipated this surprise attack by two men who were not involved in the dance-floor incident.  This Court cannot find a breach of a duty where, as here, there was an unprovoked assault by two men who played no part in the initial disturbance and exhibited no hostility toward Rader prior to the attack.

## CONCLUSION

[¶ 26]  Under the facts and circumstances of this case, Sugarland breached no duty owing to Rader and summary judgment of the district court is affirmed.